**UNITED STATES COURT OF APPEALS**
**FIFTH CIRCUIT**

_____

No. 93-8876
_____


IN THE MATTER OF: EDUCATORS GROUP HEALTH TRUST,

                                   Debtor.

SCHERTZ-CIBOLO-UNIVERSAL CITY,
INDEPENDENT SCHOOL DISTRICT, ET AL

                                        Appellants,

                    versus

STANLEY W. WRIGHT, Trustee,

                                        Appellee.

_____

Appeal from the United States District Court
for the Western District of Texas
_____
(June 30, 1994)

Before GARWOOD and EMILIO M. GARZA, Circuit Judges,   HEAD,[*]
District Judge.

EMILIO M. GARZA, Circuit Judge:

     Schertz-Cibolo-Universal City Independent School District,
Devine Independent School District, Charlotte Independent School
District, Rosebud-Lott Independent School District, Ben Bolt-Palito
Blanco Independent School District, Fairfield Independent School
District, and Ballinger Independent School District ("plaintiff
school districts") appeal from the district court's decision
affirming the bankruptcy court's ruling that certain causes of

_____

     [*]     District Judge of the Southern District of Texas, sitting by
designation.

action filed in state court belong to the bankruptcy estate. Finding that the bankruptcy court erred in arriving at a legal standard for determining which causes of action belong to the bankruptcy estate, we reverse and remand for entry of judgment in conformity herewith.

I

In August 1983, Education Group Health Trust ("EGHT") was established to provide health benefits to teachers in small school districts. The plaintiff school districts are seven of the over two hundred school districts which participated in EGHT. CRC Administration ("CRC") was the initial third-party administrator for EGHT. CRC not only collected premiums and paid claims, but also marketed EGHT's plan of benefits to various school districts. The principals of CRC were William Boon, Jerry Cunningham, Henry Labaj, and Elgin Allen ("defendants"). In 1986, American Group Life ("AGL") began marketing EGHT's plan of benefits and took over as third-party administrator for EGHT. The principals of AGL were identical to those for CRC.

In 1988, EGHT filed for Chapter 7 relief under the Bankruptcy Code. Stanley Wright was appointed as trustee of the estate. The school districts participating in EGHT became creditors of the estate. Two years later, the plaintiff school districts initiated a lawsuit in state court against the defendants, seeking to recover damages on various causes of action, including the mismanagement of

EGHT and fraud.[1]  The trustee intervened in the state court lawsuit in order to assert those claims allegedly belonging to the bankruptcy estate.  For the next two years, both the trustee and the plaintiff school districts participated in the state court lawsuit.

In 1990, the trustee filed a motion with the bankruptcy court to determine which party, the plaintiff school districts or the trustee, has the authority to pursue each particular cause of action asserted in the state court lawsuit.  Both parties submitted the matter to the bankruptcy court on stipulated facts.  The bankruptcy court entered an order granting the trustee's motion to determine its authority.  In effect, the court divided the causes of action into three categories:  (1) claims which belong solely to the bankruptcy estate;  (2) claims which may belong to the bankruptcy estate depending upon the facts established at trial; and (3) claims which belong to the plaintiff school districts.  For the purpose of determining whether a cause of action may belong to the estate, the court concluded that if the act or omission giving rise to the claim was directed generally at the school districts participating in EGHT, then the claim would belong to the estate.  The district court affirmed the decision of the bankruptcy court with a minor modification.  The school districts then filed a timely notice of appeal from that decision.

II

---

[1]      *See* Appendix.

This case requires that we decide whether the bankruptcy court erred in determining whether certain causes of action are property of the estate. For our purposes, property of the estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1) (1988). The term "all legal or equitable interests" has been defined broadly to include causes of action. *See Louisiana World Exposition v. Federal Ins. Co.,* 858 F.2d 233, 245 (5th Cir. 1988) ("Section 541(a)(1)'s reference to `all legal or equitable interests of the debtor in property' includes causes of action belonging to the debtor at the time the case is commenced."); *In re Mortgage America Corp.,* 714 F.2d 1266, 1274 (1983) (noting that the meaning of the term "all legal or equitable interests" includes, at the very least, rights of action). If a cause of action belongs to the estate, then the trustee has exclusive standing to assert the claim. *See Matter of S.I. Acquisition, Inc.,* 817 F.2d 1142, 1153-54 (5th Cir. 1987) (observing that the "general bankruptcy policy of ensuring that all similarly-situated creditors are treated fairly" requires that the trustee have the first opportunity to pursue estate actions without interference from individual creditors); *see also In re E.F. Hutton Southwest Properties II, Ltd.,* 103 B.R. 808, 812 (Bankr. N.D. Tex. 1989) ("If an action belongs to the estate, the trustee has the power and duty to prosecute the action for the benefit of all creditors and shareholders in the estate."). If, on the other hand, a cause of action belongs solely to the estate's creditors, then the trustee

has no standing to bring the cause of action. *See Caplin v. Marine Midland Grace Trust Co.,* 92 S. Ct. 1678, 1688 (1972) (holding that a trustee does not have standing to sue a third-party on behalf of debenture holders); *In re Rare Coin Galleries of America, Inc.,* 862 F.2d 896, 900 (1st Cir. 1988) ("The trustee, however, has no power to assert any claim on behalf of the creditors when the cause of action belongs solely to them.").

Whether a particular state cause of action belongs to the estate depends on whether under applicable state law the debtor could have raised the claim as of the commencement of the case. *See S.I. Acquisition,* 817 F.2d at 1142 (examining the cause of action premised on alter ego under Texas law); *MortgageAmerica,* 714 F.2d at 1275-1277 (examining the causes of action based on the Fraudulent Transfers Act and "denuding the corporation" theory under Texas law). As part of this inquiry, we look at the nature of the injury for which relief is sought. *See E.F. Hutton,* 103 B.R. at 812 ("The injury characterization analysis should be considered as an inseparable component of whether an action belongs to the [estate] or individual [creditor]."). If a cause of action alleges only indirect harm to a creditor (i.e., an injury which derives from harm to the debtor), and the debtor could have raised a claim for its direct injury under the applicable law, then the cause of action belongs to the estate. *See, e.g., S.I. Acquisition,* 817 F.2d at 1152-53 (concluding that an action based upon alter ego properly belongs to the estate, where (1) the debtor could have pierced its own corporate veil under Texas law; and (2)

the debtor was unable to meets its corporate obligations due to the misuse of the corporate form, causing a derivative injury to the individual creditor); *MortgageAmerica,* 714 F.2d at 1275 (concluding that an action under the Fraudulent Transfers Act properly belongs to the estate, where (1) the debtor could have brought the action to recover its assets; and (2) the debtor is stripped of assets, causing a derivative injury to the individual creditor). Conversely, if the cause of action does not explicitly or implicitly allege harm to the debtor, then the cause of action could not have been asserted by the debtor as of the commencement of the case, and thus is not property of the estate.

The bankruptcy court concluded as a matter of law that the trustee has the exclusive authority to bring certain causes of action listed in the complaint, based on its conclusion that those causes of action belong to the estate. The plaintiff school districts contest the bankruptcy court's legal conclusions, arguing that (1) the debtor itself was not injured or harmed; and (2) even if the debtor was harmed, the debtor shared responsibility for such harm. We address each of these arguments in turn.

The plaintiff school districts first argue that the causes of action are not property of the estate because the claims do not allege that the debtor suffered any injury or harm. We disagree with this broad assertion. Several of the causes of action allege a direct injury to the debtor, from which an injury to the plaintiff school districts is derived. For example, the plaintiffs school districts allege in paragraph XIII of the complaint that the

-6-

defendants negligently managed EGHT, causing EGHT to become insolvent and thus unable to pay the claims of employees of the plaintiff school districts. To the extent that this cause of action and others allege only a derivative harm to the plaintiff school districts, they belong exclusively to the estate.[2]

We do agree, however, with the plaintiff school districts' contention that some of the causes of action allege a direct injury to the themselves, which is not derivative of any harm to the debtor. For example, the plaintiff school districts allege in paragraph XI of the complaint that the defendants intentionally misrepresented *to them* the financial situation of EGHT, and that they materially relied on such representations to their detriment. To the extent that this cause of action and others allege a direct injury to the plaintiff school districts, they belong to the plaintiff school districts and not the estate.

In determining whether a cause of action may belong to the estate, the bankruptcy court focused on whether the act or omission complained of was directed specifically or generally at the school districts participating in EGHT. Consequently, if the factfinder were to find that the act or omission was directed generally at the school districts participating in EGHT, then the cause of action

---

[2]     This assumes, of course, that the debtor otherwise could have brought a cause of action under Texas law for its direct injury as of the commencement of the case))e.g., the debtor could have brought a negligence action under Texas law against the defendants. Aside from the injury argument and shared-responsibility argument, the plaintiffs school districts do not dispute that the debtor could have raised the causes of action listed in the complaint.

would belong to the estate; if not, then the cause of action would belong to the plaintiff school districts. The problem with the bankruptcy court's framework is that it assumes, rather than decides, whether a cause of action belongs to the bankruptcy estate. Stated differently, the fact that creditors in general are harmed does not determine whether a cause of action belongs to the bankruptcy estate; rather, general harm to creditors *necessarily follows* from the fact that the debtor has been injured.[3] The bankruptcy court's standard for determining whether a cause of action belongs to the estate ignores the relationship between the debtor and the nature of the injury suffered. Because that relationship must be considered when determining whether a cause of action belongs to the estate, we conclude that the bankruptcy court applied the wrong legal standard to the causes of action listed in the complaint.[4]

---

[3] Another problem with the bankruptcy court's framework is that it assumes, without explicitly finding, that the school districts purchasing health care coverage through the EGHT constitutes all of EGHT's creditors. Based on this assumption, the bankruptcy court equates general harm to the school districts with general harm to creditors.

[4] We reject the argument that the bankruptcy court's framework is somehow consistent with our prior opinion in *S.I. Acquisitions.* There, we held that an alter ego action is property of the estate under Texas law, and thus, can be brought by the trustee on behalf of all similarly-situated creditors. *See id.,* 817 F.2d at 1153-54. We neither held nor implied that a cause of action belongs to the estate simply because it could be brought by many creditors, as opposed to only one. Interpreting *S.I. Acquisitions* to stand for this latter proposition would violate the well-established rule that trustees have no standing to bring personal claims of creditors. *See Caplin,* 92 S. Ct. at 1688.

We decide, rather than remand, the question of what specific causes of action belong to either party, as it is a matter of law based on the application of the legal standard discussed above to the facial allegations in the complaint. Accordingly, to the extent that the complaint alleges an injury to the plaintiff school districts which derives from a direct injury to the bankruptcy estate, we hold that the following claims belong solely to the estate: (1) the claims that the defendants negligently managed, and conspired to negligently manage, EGHT (paragraphs XII-XIII of complaint); (2) the claim that the defendants conspired to commit fraudulent transfers (paragraph XII);[5] (3) the claims that the defendants conspired to make EGHT insolvent and to commit fraud on EGHT (paragraph XII); (4) the claim that the defendants breached their contracts with EGHT, as well as their duties of good faith and fair dealing (paragraph XIV); (5) the claim that the defendants were unjustly enriched with funds of EGHT (paragraph XV); and (6) the claim that the defendants breached their fiduciary duties. *See* Appendix paragraph XVI.

To the extent that the complaint alleges a direct injury to the plaintiff school districts, we further hold that the following claims belong solely to them: (1) claims based on violations of the Texas Deceptive Trade Practices Act, and conspiracy to commit same (paragraphs IX, XII); (2) claims based on violations of the

---

[5]      *See MortgageAmerica,* 714 F.2d at 1275 (holding that because an action under the Texas Fraudulent Transfers Act is essentially one for property that properly belongs to the debtor, the cause of action belongs to the debtor).

Texas Insurance Code (paragraph X); (3) claims based on fraud, and conspiracy to commit fraud (to the extent that these claims are based on alleged false misrepresentations to the plaintiff school districts) (paragraphs XI-XII); (4) claims based on negligence (to the extent that these claim allege a breach of a duty of care owed to the plaintiff school districts) (paragraph XIII);[6] and (5) the claim that the defendants negligently misrepresented the financial status of EGHT to the plaintiff school districts. *See* Appendix paragraph XVII.

The plaintiff school districts also argue that the causes of action listed in the complaint are not property of the estate because the debtor's representatives participated in the acts or omissions giving rise to the causes of actions. Implicit in this argument is the notion that a debtor cannot raise a cause of action for which the defendant may have a valid defense on the merits. It is well-established that the bankruptcy estate succeeds to the causes of action which the debtor could have brought as of the commencement of the case, subject to any defenses the debtor may have faced. 11 U.S.C. § 541(a)(1). However, the plaintiff school districts fail to cite, and we cannot find, any support for the proposition that a defense on the merits of a claim brought by the debtor precludes the debtor from *bringing* the claim. That the defendant may have a valid defense on the merits of a claim brought by the debtor goes to the resolution of the claim, and not to the

---

[6] For example, paragraph XIII alleges that the defendants failed to use ordinary care to inform the plaintiff school districts that the EGHT was insolvent.

-10-

ability of the debtor to assert the claim.[7]  The latter, of course, determines what is, or is not, property of the bankruptcy estate. We therefore reject the plaintiff school districts' second argument on appeal.

### III

For the foregoing reasons, we REVERSE the decisions of the district court and bankruptcy court, and REMAND for entry of judgment in conformity herewith.

---

[7]    We cannot conclude from the allegations in the complaint whether representatives of EGHT actually participated in the acts or omissions giving rise to the causes of action.  For this reason, we find misplaced the plaintiff school districts' reliance on *Shearson Lehman Hutton Inc. v. Wagoner,* 944 F.2d 114 (2d Cir. 1991).  There, "it [was] uncontested" that the management of the debtor-corporation cooperated with the third-party defendant in stripping the corporation of its assets.  *See Shearson,* 944 F.2d at 120.

APPENDIX

The complaint alleges the following:


IX.

<u>VIOLATIONS OF THE DECEPTIVE TRADE PRACTICES ACT</u>

9.01     The actions of Defendants Boon, Cunningham, Seale, Labaj, Allen, and DeLeon in representing to the Plaintiff School Districts that the EGHT was "sponsored" by TACS, was done in such a way as to imply that the TACS had control over the EGHT plan, which it did not.    Said representations violated §17.46(b)(2), (3) and (5) of the DTPA.

9.02     Defendants DeLeon, Boon, Cunningham, Labaj, and Seale, in representing that "the liability of the participating school and the trust for the payment of benefits under the plan as of any date is limited solely to the assets of the fund," in contradiction of §21.922 of the Texas Education Code, violated §17.46(b)(12) of the DTPA.

9.03     Defendants AGL, Boon, Cunningham, Labaj and Allen, by misrepresenting that substitute coverage at the same level of benefits and premiums would be automatically extended on September 1, 1988 for the Plaintiffs, violated §17.46(b) (12) of the DTPA.

9.04     The failure to disclose that EGHT was having financial difficulties, while continuing to market participation in the EGHT to the Plaintiff School Districts

was a violation of §17.46(b)(23) of the DTPA by Boon, Cunningham, Labaj, Allen, Seale, DeLeon and AGL.

9.05    In their failure to disclose a conflict between their actions as third part administrators of EGHT and as retrocessionaires, Defendants Boon, Cunningham, Labaj and Allen violated §17.46(1), (2), and (3) of the DTPA.

9.06    All of the foregoing acts, in addition to violating specific sections of §17.46, as described more particularly herein, constituted unconscionable actions or courses of action by the specified Defendants, pursuant to §17.50(a)(3).

X.

VIOLATIONS OF THE TEXAS INSURANCE CODE

10.01    The actions of AGL, Boon and Cunningham, in acting as third party administrators for the EGHT violated arts. 21.07-5 and 21.07-6 of the Texas Insurance Code.

10.02    The actions of Boon, Cunningham, Labaj, Seale, Allen, DeLeon and AGL, described more completely in Paragraph IX above, constituted violations of arts. 21.21 §4(2) and §16 of the Texas Insurance Code, Board Orders 18663, 37550, 41060, 41454, and §§21.3, 21.4, 21.103, 21.105, 21.112 and 21.203 of Title 28 of the Texas Administrative Code, adopted by the State Board of Insurance pursuant to authority granted by the Texas Insurance Code.

-13-

## XI.

### FRAUD AND CONSTRUCTIVE FRAUD

Defendants Boon, Cunningham, DeLeon, Seale, Labaj and Allen committed fraud with regard to the Plaintiff School Districts in that their representations to the School Districts with regard to the financial situation of the EGHT constituted false representations of material facts which were made for the purpose of inducing the School Districts to enter into contracts with the EGHT, and which representations were relied upon by the School Districts in entering the contracts with the EGHT. In addition, or in the alternative, the actions of said Defendants constituted constructive fraud in that they concealed the financial condition of the EGHT and the improper or inadequate structure of the EGHT plan and such concealment was a breach of a legal duty, trust or confidence which was injurious to the School Districts or by which undue and unconscionable advantage was taken of the School Districts.

## XII.

### CONSPIRACY

12.01    The actions of Defendants Boon, Cunningham, DeLeon, Seale, Labaj and Allen, were in the nature of a conspiracy. That is, acts were committed by each of these parties in the pursuance of an agreement to commit fraud, to commit fraudulent transfer (in violation of §24.001, et. seq., TEX. BUS. & COMM. CODE) to violate the Deceptive Trade Practices Act, and to commit negligence.

-14-

12.02    The actions of Defendants Boon, Cunningham, DeLeon, Seale, Labaj, in terminating the reinsurance, were in the nature of a conspiracy to make EGHT insolvent and/or commit fraud on EGHT, to the detriment of the Plaintiffs.

XIII.

NEGLIGENCE AND GROSS NEGLIGENCE

13.01    Defendants Boon, Cunningham, DeLeon, Seale, Labaj and Allen were negligent in the following particulars: in failing to use ordinary care to inform the School Districts that the EGHT was insolvent or in eminent danger of becoming insolvent; in engaging in conflicts of interest in their dealing with the School Districts and the EGHT; in failing to take action to prevent EGHT from becoming insolvent or improving its financial condition, rather than recommending or accepting that EGHT file bankruptcy; by failing to properly manage and oversee the administration of the EGHT; by negligently misrepresenting the financial condition of the EGHT to the School Districts; and/or by allowing and/or recommending that the stop loss insurance be terminated, in violation of §21.922 of the Texas Education Code.

13.02    Defendants Stop Loss and Unilife were negligent in their involvement in the decision to terminate the stop loss insurance for EGHT.

13.03    Defendant Boon was also negligent in having signed a $2 million loan on behalf of EGHT without prior authority

-15-

from EGHT and in failing to inform the School Districts that the EGHT was $2 million in debt and financially unhealthy.

13.04    Defendant Cunningham was also negligent in encouraging the EGHT Board to ratify the loan signed by Defendant Boon without authority.

13.05    Defendants Boon and Cunningham were also negligent in failing to reveal the conflict between their relationship as their party administrators to the EGHT and as retrocessionaires.

13.06    Defendant AGL was negligent in marketing a plan (the EGHT plan) which was insolvent, without disclosing its financial condition to the School Districts.

13.07    Defendant DeLeon was also negligent in his legal representation of the EGHT, and therefore, in his legal representation of the School Districts as members or beneficiaries of the EGHT.

13.08    Defendants AGL, Boon, Cunningham, Labaj and Allen were also negligent in misrepresenting that substituted coverage at the same level of benefits and premiums would be automatically extended to the Plaintiffs on September 1, 1988.

13.09    All of the foregoing acts by the specified Defendants, in addition to constituting negligence, constituted gross negligence which proximately caused the Plaintiffs' damages and give rise to exemplary and/or punitive damages.

XIV.

## BREACHES OF CONTRACT AND OF THE DUTIES
## OF GOOD FAITH AND FAIR DEALING

14.01    Defendants AGL and Boon, Cunningham, Labaj and Allen, acting through various corporate fictions, breached their contracts with EGHT, and therefore with the members and/or beneficiaries of EGHT, by failing to pay medical claims to Plaintiffs, and by failing to provide reinsurance and/or properly protect or otherwise properly manage and/or structure the EGHT plan.  These actions also constituted breaches of the duties of good faith and fair dealing by said Defendants.

14.02    Defendants Stop Loss and Unilife breached their contracts with EGHT, of which Plaintiffs were beneficiaries, by their failure to pay claims which were incurred by the EGHT and breached duties of good faith and fair dealing by their involvement in the decision to terminate the reinsurance.

XV.

## UNJUST ENRICHMENT/QUANTUM MERUIT

Defendants Boon, Cunningham, AGL and Seale were all compensated with funds of the Plaintiffs by EGHT for acts which were not performed by them, and for which they should not have been compensated.  Accordingly, they should be required to disgorge said sums and return them to the Plaintiffs.

-17-

XVI.

## BREACHES OF FIDUCIARY DUTIES

Defendants DeLeon, Seale, Boon, Cunningham, Labaj, Allen and Stop Loss all owed fiduciary duties to the EGHT, and, as a result, owed duties to the individual members or beneficiaries of the EGHT, including the Plaintiffs, which duties were breached by the actions more particularly described in Paragraphs IX - XV herein.

XVII.

## NEGLIGENT MISREPRESENTATION

Defendants De Leon, Seale, Boon, Cunningham, Labaj and Allen committed negligent misrepresentation with regard to the Plaintiff school districts in that they supplied false information to the school districts regarding the financial status of the EGHT, which statements were relied upon by the Plaintiff school districts as more particularly described in paragraphs IX-XVI, which was a breach of a legal duty, trust or confidence and which was injurious to the school districts.