REVISED JANUARY 15, 2003

**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

_____

No. 01-10314
Consolidated with
No. 01-11108

_____

SECURITIES AND EXCHANGE COMMISSION,

Plaintiff,

VERSUS

SHARP CAPITAL, INC., a Texas Corporation, ET AL.,

Defendants;

RALPH S. JANVEY,
on behalf of Sharp Capital, Inc., Special Master,

Appellee,

VERSUS

ROBERT FERNANDEZ, and Fifty-Three Other
Similarly Situated Investor Clients,

Movant-Appellant.

Appeals from the United States District Court
for the Northern District of Texas, Dallas Division

January 8, 2003

Before DAVIS, JONES and SMITH, Circuit Judges.

W. EUGENE DAVIS, Circuit Judge:

Appellants, Robert Fernandez and fifty-three other investors (the Fernandez Group) in Sharp

Capital, Inc., appeal the district court's judgments approving settlements between Sharp and third parties which settlements included permanent injunctions barring the Fernandez Group from pursuing their claims against those third parties in state court. For reasons that follow, we are satisfied that the district court did not abuse its discretion in using a summary judgment type proceeding to determine that the Fernandez Group had no direct claims against appellees or in entering an injunction barring the Fernandez Group from pursuing those claims, which belonged solely to Sharp. Therefore, we affirm.

I.

In November 1998, the Securities and Exchange Commission sued Sharp Capital, Inc., Mauricio A. Gutierrez (Sharp's principal) and Emerging Markets Capital Advisors, Ltd. (EMCA) invoking the district court's equity powers and seeking t o enjoin alleged violations of the federal securities laws. The court entered a preliminary injunction prohibiting anyone from interfering with Sharp's assets, signed an order taking jurisdiction of all of Sharp and EMCA assets for the benefit of defrauded investors and appointing Robert Janvey, Special Master, to gather and distribute those assets. This appeal relates to orders of the Special Master (approved by the district court) enjoining individual investors from suing to recoup their individual losses from entities with whom Sharp had business dealings.

The SEC charged Sharp and others with defrauding numerous investors. Sharp was an investment advisory company registered with the SEC. It entered into investment advisory agreements with over 130 Mexican nationals who invested approximately $82 million. The Fernandez plaintiffs / appellants are 54 of Sharp's investors who invested approximately $23 million. Sharp promised to place the investors' funds in safe, conservative investments such as Eurobonds,

2

Euro CDS and money market funds. Instead it used the investors' money to make highly leveraged purchases of investments in volatile emerging markets such as Russia and Latin America. Sharp also pooled the funds in EMCA, a Bahamian corporation, and used them to make substandard loans to entities affiliated with Grupo Protexa, a group of Mexican companies, and others. By the time the SEC stepped in, Sharp had lost about 94% of the investors' money.

The Investment Advisory and Custody Agreement that each investor signed with Sharp required Sharp to deposit the funds in NationsBank (n/k/a Bank of America) (the Bank) in an account owned by Sharp. Sharp was permitted to pool the funds in one account as long as all funds came from Sharp's investors. The Investment Agreement gave Sharp exclusive authority to manage and make investment decisions regarding the funds. Sharp did open a custodial account at the Bank without investment advice which required the Bank to follow Sharp's directions for use of the funds.

Following his appointment, the Special Master began the process of settling claims of Sharp for the benefit of the investors. In June 1999, the Special Master began negotiations with Grupo Protexa who had borrowed substantial sums from Sharp and whose loans were in default.

In October 1999, the Fernandez plaintiffs filed suit in state district court against Grupo Protexa, the Bank and other defendants who had done business with Sharp or acted as Sharp's agents, but who were not parties to the SEC action. The suit raised various state law causes of action including fraud, negligent misrepresentation, violation of the Texas DTPA, negligence, conversion, breach of trust, breach of fiduciary duty, misapplication of fiduciary property, violation of the Texas Securities Act and constructive trust/unjust enrichment. The Bank responded to the Fernandez lawsuit by filing an action for contribution and contractual indemnity against Sharp, asserting a right to recover over from Sharp any damages the Fernandez Group might recover from the Bank in the

state court action. The Bank's suit was consolidated into the main SEC suit.

In April 2000, the Special Master applied to the district court in the SEC action for approval of a settlement it had negotiated with Grupo Protexa. The Special Master concluded that the Fernandez Group's claims against Grupo Protexa were derivative of Sharp's claims and requested that the settlement include a release of the Fernandez Group's claims against Grupo Protexa and an injunction to prohibit them from further pursuing those claims in the state court suit. At the request of the Special Master, the district court ordered a summary proceeding to evaluate the settlement and give the Fernandez claimants the opportunity to demonstrate that they had direct claims against Grupo Protexa.

In his application for approval of the Grupo Prot exa settlement, the Special Master also requested authority to investigate Sharp's claims against the Bank, which the district court granted. In its investigation the Special Master focused on whether the Fernandez plaintiffs had any direct claims against the Bank or were asserting claims derivative of Sharp's claims controlled by the Special Master. The Special Master sent questionnaires to all Sharp investors asking them to identify all Bank employees with whom they had contact and to disclose any facts that would support a direct claim against the Bank. The Fernandez plaintiffs refused to answer. The Special Master also reviewed discovery in the state court suit. The Special Master concluded that the Fernandez Group had no direct claims against the Bank and were asserting derivative claims of Sharp that were under his control.

The Special Master negotiated a settlement with the Bank which included Sharp's claims against the Bank and the Bank's contribution and indemnity action against Sharp. The Special Master then asked the district court to approve the settlement. Again the settlement called for release of all

4

of Sharp's claims, a release of the Bank's contribution claims and an injunction to prevent the Fernandez Group from pursuing their claims against the Bank in the state court suit. The district court ordered a summary proceeding to allow the Fernandez Group the opportunity to present evidence of direct claims against the Bank.

The Fernandez Group filed Responses to the Special Master's Applications for approval of the settlements with Grupo Protexa and the Bank. Their submissions included their original and amended petitions from the state court case, declarations from individual Fernandez plaintiffs and the Sharp brochure, fund receipt confirmations and portfolio analysis statements. The district court held separate hearings on each settlement and counsel had an opportunity to argue their position.[1]

As to the Bank Settlement, the district court found that none of the Fernandez litigants was able to attest to any direct contact with the Bank and no evidence was submitted to support their allegations that the Bank had made misrepresentations to them. Further, no evidence was submitted to support their contention that the Bank owed the Fernandez Group an independent duty.

As to the Grupo Protexa Settlement, the district court also found that no one opposing the settlement could attest to any direct contact with Protexa or other related parties dealing with their Sharp investments. As to both settlements, the district court found that the declarations and other evidence submitted by the Fernandez plaintiffs failed to assert facts sufficient to establish direct claims against the Grupo Protexa parties or the Bank or claims that were not derived from the losses they suffered due to their investments in Sharp and/or EMCA.

The district court ultimately approved both the Grupo Protexa and Bank settlements and

---

[1] At the Grupo Protexa settlement hearing, the Fernandez Group apparently submitted evidence *in camera* which neither the Special Master nor Grupo Protexa were allowed to review, but no one relies on that evidence in this appeal.

5

entered permanent injunctions barring the Fernandez Group from pursuing their claims against Grupo Protexa and the Bank in state court. The Fernandez Group timely appealed from each order and their appeals were consolidated in this case.

## II.

All parties agree that the authority of the Special Master and the district court to marshal the assets of Sharp extends only to assets that actually belong to Sharp and EMCA. See Caplin v. Marine Midland Grace Trust Co., 406 U.S. 416, 432 n.22 (1972). The parties dispute whether the claims asserted by the Fernandez Group in the state court suit are derivative of rights of Sharp, and therefore fall under the authority of the Special Master, or rather are direct claims by the investors against Grupo Protexa and the Bank which are owned by the Fernandez Group and therefore beyond the authority of the Special Master. If the claims are not derivative of Sharp's claims and therefore not property of the Sharp estate, then the appellants are correct that the injunction is improper because the Special Master would have no standing to settle the claims and the district court would have no jurisdiction over them. Conversely, it is clear that if the claims are property of the Sharp estate, then the Special Master does have standing to settle the claims. Id.

Under Schertz-Cibolo-Universal City v. Wright (In re Educators Group Health Trust), 25 F.3d 1281 (5th Cir. 1994), this circuit set forth the following test to determine if causes of action are property of a bankruptcy estate. The parties agree that bankruptcy estates and receiverships are analogous proceedings for this purpose and that the following test applies to this case.

> Whether a particular cause of action belongs to the estate depends on whether under applicable state law the debtor could have raised the claim as of the commencement of the case. . . . [W]e look at the nature of the injury for which relief is sought. . . . If a cause of action alleges only indirect harm to a creditor (i.e., an injury that derives from harm to the debtor), and the debtor could have raised a claim for its direct injury

6

under the applicable law, then the cause of action belongs to the estate. . . . Conversely, if the cause of action does not explicitly or implicitly allege harm to the debtor, then the cause of action could not have been asserted by the debtor as of the commencement of the case, and thus is not property of the estate.

Id. at 1284. In re Educators Trust applied a 12(b)(6) type analysis to determine this question, looking only at the allegations of the complaint. Facts were stipulated by the parties, but did not appear to play a role in the decision. The Trustee concedes that, under a 12(b)(6) type analysis, some of the allegations in the Fernandez's state case "could qualify as direct claims against the Bank." Other claims are derivative of the general harm to Sharp "unless the Fernandez Plaintiffs establish an independent duty owed directly to them by the Bank." There is no similar concession as to the Grupo Protexa claims, but based on the allegations in the Fernandez petition, it appears that the Fernandez's allegations could satisfy the test set forth in In re Educators for stating direct claims. We, therefore, turn to the principal issue presented by the appeal: Was it appropriate for the district court to look beyond the Fernandez plaintiffs' pleadings in resolving whether their claims against the Bank and Grupo should be characterized as direct claims or derivative of Sharp's claims.

III.

The Fernandez plaintiffs contend that In re Educators prohibits the district court from looking beyond their allegations. We disagree. Nothing in In re Educators suggests that the procedure utilized in that case is the only proper procedure. Also, cases from other circuits dealing specifically with SEC enforcement and receivership actions have allowed summary proceedings, similar to the procedure the district court followed, to determine if a particular asset is the property of the Special Master.

In SEC v. Elliott, 953 F.2d 1560 (11th Cir. 1992), a receiver was appointed to take

7

possession of a company's assets after the SEC accused it and its principals of running a Ponzi-type scheme. Addressing generally the district court's use of summary proceedings to resolve disputes regarding claimed assets of the receiver, the Eleventh Circuit held that summary proceedings are within the broad powers and wide discretion the district court enjoys to adjudicate relief in an equity receivership proceeding. Id. at 1566. The Elliott court concluded that "a district court does not generally abuse its discretion if its summary procedures permit parties to present evidence when the facts are in dispute and to make arguments regarding those facts." Id. at 1567. In order to establish abuse, "appellants must show how they were prejudiced by the summary proceedings and how they would have been better able to defend their interests in a plenary proceeding." Id.

Analyzing the specific allegations of various investors in Elliot, the court concluded that the summary procedure was inadequate as to one party's claims. That party requested a hearing, intervention and limited discovery on their claim of fraudulent transfer. No hearing was held to give them the opportunity to dispute the facts asserted by the Receiver and their claim was remanded for a hearing. Id. at 1568. In contrast, as to a dispute regarding ownership of securities "loaned" to Elliot, the Eleventh Circuit concluded that the district court did not abuse its discretion in deciding that issue without a hearing because the facts surrounding the transfers were undisputed. Id. at 1570-71.

Similarly, in SEC v. Basic Energy & Affiliated Res., 273 F.3d 657 (6th Cir. 2001), the Sixth Circuit affirmed a judgment following a summary proceeding used to resolve the ownership of an escrow account. The escrow investors were represented by counsel at two motion hearings addressing their objections which gave them ample opportunity to rebut the Receiver's characterization of the facts. Further, the investors did not demonstrate how they were prejudiced

8

by the lack of an evidentiary hearing. Id. at 668. See also CFTC v. Topworth Int'l, Ltd., 205 F.3d 1107, 1113 (9th Cir. 1999).

The Fernandez Group argues that these cases dealt with assets other than causes of action and are therefore inapplicable. We see no basis on which to distinguish the appropriate procedure to determine ownership of different types of assets. The question then is whether the process offered by the district court was adequate in light of the Fernandez plaintiffs' claims.

IV.

The district court's summary procedure order provided that:

> all persons who purport to hold a stake in the Protexa Settlement, with special reference to the Fernandez Plaintiffs . . . shall provide, in writing, the facts and legal authorities upon which they rely, supported by affidavits, declarations or other competent evidentiary-type materials, to establish the basis and nature of any "direct" claims asserted against Protexa.

The order further described the summary judgment type procedure that the district court established for evaluating the Fernandez Group's claims. Based on the Special Master's preliminary filings and the failure of the Fernandez plaintiffs to respond to the Special Master's questions, the district court found preliminarily that the Special Master had established that the evidence in the record was insufficient to establish that the Fernandez Group was raising direct causes of action in the state court suit against the Bank and Grupo Protexa. It then directed the Fernandez Group to come forward with evidence that would create a genuine issue tending to show that they had direct claims against the third parties.

This is similar to a summary judgment procedure where, once the moving party establishes that no evidence in the record supports the nonmovant's claims, the burden shifts to the nonmovant to come forward with evidence to create a genuine issue of fact. See Kinsey v. Farmland Indus., 39

9

F.3d 603, 606 (5th Cir. 1994). This procedure does not put the burden of proof on the Fernandez plaintiffs. Rather, the district court's order imposed on the Fernandez plaintiffs the burden of coming forward with summary judgment type evidence sufficient to rebut the Special Master's assertion that these plaintiffs had no direct claims against the Bank and Grupo Protexa.

In the state court suit, as in the affidavits filed in response to the district court's order, the Fernandez plaintiffs' alleged that the defendants made misrepresentations to them about their investments and that the defendants breached a duty or relationship of trust and confidence. These claims would require proof of a misrepresentation or facts supporting the existence of an independent duty on the part of the defendants to the Fernandez plaintiffs. Before the district court issued its order, the Special Master had already pointed to the lack of evidence in the record of either a direct relationship between the investors and the Bank or Grupo Protexa or an independent duty owed by those defendants to the Fernandez investors. The order appropriately called upon the plaintiffs to come forward with evidence to rebut the defendants' argument that the plaintiffs had no direct claims against them. The district court examined discovery in the state court suit as well as the plaintiffs' responses filed in this action. The Fernandez plaintiffs were unable to produce evidence supporting their arguments that they had direct claims against either the Bank or Grupo Protexa.

As to the Bank Settlement, the Fernandez claimants argue that "Discovery would have permitted the Fernandez Claimants to determine Bank of America's precise role in the formulation and distribution of solicitation materials or its role in the removal of investor funds from supposed trust accounts." The Fernandez Claimants action against the Bank appears to be based on the information in Sharp's solicitation materials that the Bank, described as "one of the largest and most solvent financial institutions in the United States," would provide independent custodial services. The

10

claimants also point to Sharp's use of the Nations Bank logo and the fact that they sent their funds directly to the Bank, rather than to Sharp and were issued monthly statements bearing a Bank account number.

The Fernandez Group's arguments are directly refuted by the express terms of the Investment Advisory and Custody Agreement with Sharp that each investor signed. That agreement specifically ceded control over the funds in the account, not to the Bank, but to Sharp. The Fernandez plaintiffs produced no instrument that purported to obligate the Bank to restrict the use of the funds in the investors' Sharp accounts, nor did they produce other facts that would impose such a duty on the Bank. Citizens Nat'l Bank v. Hill, 505 S.W. 2d 246, 248 (Tex. 1974). Also, any claims related to the Bank's role in the removal of investor funds from the accounts in violation of the Advisory and Custody Agreement are claims that Sharp could have brought, and thus within the authority of the Special Master. In re MortgageAmerica Corp., 714 F.2d 1266, 1271 (5th Cir. 1983).

The Fernandez Group, in their brief challenging the court's ruling in the Grupo Protexa case, complains of the lack of discovery generally, without a statement of what specific discovery they wished to conduct and what information they expected additional discovery to reveal. As to claims against both the Bank and Grupo Protexa, the Fernandez Group does not assert why the evidence needed to show direct claims is not within their knowledge. For example, the investors would know of or have access to records of verbal or written communication from the Bank or Grupo Protexa or other contact from these parties related to their accounts that established a duty on the part of the these defendants to the investors. The Fernandez plaintiffs have offered no satisfactory explanation of how they were prejudiced by the summary proceedings or how they would have been better able to defend their interests in a plenary proceeding with more extensive discovery. Our review of the

11

record satisfies us that the process allowed by the district court was fair and adequate.

The only challenge the appellants make to the district court's order relates to the district court's procedural errors in resolving the ownership of the claims they assert against the Bank and Grupo Protexa, that is whether Sharp owns the claims or the investors own the claims. They do not challenge the right of the court to issue an injunction to protect assets belonging to the receivership.[2]

Because we conclude that the district court did not abuse its discretion in following the procedure it used to resolve the issue of ownership of the claim against Bank and Grupo Protexa, we affirm the judgment of the district court.

AFFIRMED.

---

[2]Appellant did not raise the Anti-Injunction Act in the district court nor in their briefs to this court and at argument both counsel agreed it has no application to this case.