GREGG COSTA, Circuit Judge:
Before Buccaneer Resources LLC filed for bankruptcy, it fired its CEO, Curtis Burton. Burton filed a claim for breach of contract in the bankruptcy, but later dropped that and filed a tortious interference with contract claim in state court against Buccaneer's secured creditor, Meridian Capital CIS Fund. Meridian removed the case to federal court, arguing that the claim belonged in the bankruptcy. The bankruptcy court disagreed, sending the tortious interference claim back to state court. The district court affirmed.
The dispute about jurisdiction turns on whether the tortious interference claim belongs to Burton, in which case it should be heard in state court, or to the debtor Buccaneer, in which case bankruptcy court is the proper forum. Because the claim seeks to recover for a direct injury to Burton, we agree with the bankruptcy and district courts that he can pursue it in state court.
I.
Burton was Buccaneer's CEO from the company's founding in 2006 until May 2014. Along with affiliated entities, Buccaneer was an oil exploration and production company. Although companies that hit gushers get the attention, Buccaneer had the more common experience for oil and gas ventures: it never struck it big.
*293 As Buccaneer's fortunes dwindled, Meridian Capital CIS Fund became its most important secured creditor. By January 2014, it held all of Buccaneer's senior debt, securing it with a blanket lien over all Buccaneer's assets. The purchase of senior debt rescued Buccaneer from immediate insolvency, but it was only a temporary life raft-Buccaneer filed for Chapter 11 in May.
Shortly before that bankruptcy filing, Buccaneer fired Burton. Burton says the termination violated the terms of his contract and triggered a penalty worth three years of his base salary. He contends that Meridian was involved in Buccaneer's decision. According to Burton, three of the four Buccaneer board members, that is every board member other than Burton, had close ties to Meridian-some were even appointed by it. In emails, Meridian referred to intriguing assets Buccaneer controlled, assets that could benefit Meridian if Buccaneer was operated by a new CEO it controlled. Burton also alleges that Meridian contacted the board and informed it that Meridian would no longer invest or loan money to Buccaneer unless Burton was fired.
Burton filed a claim in the bankruptcy but later withdrew it. Buccaneer and Meridian eventually reached a settlement in which Buccaneer released Meridian from any potential claims Buccaneer may have had for $10 million. That settlement was incorporated into Buccaneer's bankruptcy plan.
Burton then filed this suit against Meridian (and several affiliates and individual advisors for the fund) in state court, alleging tortious interference with contract as well as tagalong claims of conspiracy and assisting. Meridian removed the case to the bankruptcy court, arguing that the claims belonged to the debtor's estate and were thus released in the Buccaneer-Meridian settlement. The bankruptcy court mostly disagreed, concluding that the tortious interference claim belonged to Burton and thus should be litigated in state court. The district court later remanded all claims to state court as the follow-on claims depended on the success of the tortious interference claims. This appeal followed, and the parties agree that the fate of all claims turns on what we decide about the tortious interference claim.
II.
Whether the bankruptcy estate or a creditor can pursue a claim against third parties is a recurring issue in bankruptcy law. In re Seven Seas Petroleum, Inc ., 522 F.3d 575 (5th Cir. 2008), instructs us to focus on whether the creditor has suffered a direct injury or one that is derivative of an injury to the debtor. Id . at 584. If the harm to the creditor comes about only because of harm to the debtor, then its injury is derivative, and the claim is property of the estate. Id . ; see also 11 U.S.C. § 541(a)(1). In that situation, only the bankruptcy trustee has standing to pursue the claim for the estate so that all creditors will share in any recovery. Seven Seas , 522 F.3d at 584.
As for direct-injury claims that belong to a particular creditor or group of creditors, the simple case is when the claim does not involve any harm to the debtor. These cannot be part of the estate. Id. at 584 (quoting In re Educators Grp. Health Trust , 25 F.3d 1281, 1284 (5th Cir. 1994) ). But even when the conduct harms the debtor, the creditor may also have a claim if its asserted injury does not flow from injury to the debtor. This means that the estate and a creditor may have separate claims against a third party arising out of the same events. Seven Seas , 522 F.3d at 585, 590 ; Educators Trust , 25 F.3d at 1284-85. To pursue a claim on its own *294 behalf, a creditor must show this direct injury is not dependent on injury to the estate.[1]
Our caselaw illustrates the difference between direct and derivative injuries. See Seven Seas , 522 F.3d at 585-86. The unsecured bondholders in Seven Seas sued a consulting firm that provided false oil reserve estimates. Id . at 585. The bondholders relied on those estimates when deciding to invest. Id. That induced reliance did not injure the debtor, only the bondholders, so the injury was direct and belonged to the creditors. Id . A similar example involved school districts that were creditors of a bankrupt health benefits provider. Their claim that a third-party health plan administrator misled them alleged a direct injury not dependent on harm to the debtor. Educators Trust , 25 F.3d at 1285 (remanding the claim involving a direct injury to state court).
Other cases demonstrate derivative injuries. When third parties lured a debtor into transferring them oil and gas assets, they eliminated the creditors' hopes of recovering a portion of the value of those assets. In re Lothian Oil, Inc ., 531 F. App'x 428, 439 (5th Cir. 2013). The creditors' injury (reduced bankruptcy recovery) derived from injury to the debtor (the loss of estate assets), so only the estate could sue the third parties. Id. at 439-40. Similarly, an alter ego suit that attempted to pierce the corporate veil and recover assets improperly moved through the corporate structure belonged only to the estate. See In re Schimmelpenninck , 183 F.3d 347, 358 (5th Cir. 1999). And only the estate owned a claim against a bank for aiding the debtor's managers to encumber the debtor's assets with new liens. See In re R.E. Loans , 2013 WL 1265205, at *5 (N.D. Tex. Mar. 28, 2013). Once again, the plaintiff's injury of a reduced bankruptcy recovery derived from harm to the debtor-that caused by the liens-so the estate owned the claim. Id.
Unlike these derivative injuries, the harm to Burton from an improper firing without the required severance does not depend on any harm to the debtor. In fact, the termination of his employment contract may have saved Buccaneer money. Meridian says it did. The injury to Burton flowed through Buccaneer's actions-allegedly taken at Meridian's request-but not through an injury to the debtor. Viewed another way, there is no reason why the estate should recover for a third party's tortious conduct that did not injure the bankrupt company. See In re Zale Corp. , 62 F.3d 746, 755 (5th Cir. 1995) (holding that bankruptcy court did not have jurisdiction over bad-faith claims third parties brought against a debtor's insurer because "the claims are not property of the estate and they have no effect on the estate"); Steinberg v. Buczynski , 40 F.3d 890, 893 (7th Cir. 1994) ("When a third party has injured not the bankrupt corporation itself but a creditor of that corporation, the trustee in bankruptcy cannot *295 bring suit against the third party."). This may be more evident when the third party allegedly committed a personal-injury tort as opposed to an economic one; the Seventh Circuit used the hypothetical of a creditor's slip-and-fall claim against a third party that no one would contend belongs to the estate. Id . at 892. But the principle is the same when the third party engages in tortious conduct that causes a direct economic harm to a particular creditor. Id . at 893 ; Seven Seas , 522 F.3d at 587. The tortious interference claim thus belongs to Burton.[2]
Meridian tries to avoid this straightforward conclusion by arguing that the tortious interference claim is really one for lender liability in disguise. It says the injury was improper control of Buccaneer, and that improper control led to Burton's termination, making it a derivative harm. But whatever label is put on Burton's claim, what matters is the nature of the injury he is seeking compensation for. Seven Seas , 522 F.3d at 584. As we just explained, Burton's termination did not depend on Buccaneer suffering an injury. It may be that Buccaneer was also injured by Meridian's control of its board (Meridian paid $10 million to settle Buccaneer's claims after all, but a debtor and creditor can have separate claims arising from the same conduct. Seven Seas , 522 F.3d at 585. As long as the injury a creditor is pursuing against a third party does not stem from the depletion of estate assets, the injury is a direct one that does not belong to the estate.
In re Dexterity Surgical, Inc. , 365 B.R. 690 (Bankr. S.D. Tex. 2007), does not counsel otherwise. Most of the six claims a debtor's minority shareholders brought against the majority shareholder and members of the debtor's board were classically derivative-they sought to recover for harm resulting from the defendants' looting the debtor's assets. Id. at 696-99. A business entity largely owned by the same shareholders also brought a claim alleging the defendants tortiously interfered with a contract it had with the debtor. The interference claim did not add any new allegations; it just realleged the facts that gave rise to the breach of fiduciary duty claims involving derivative harm. Id . at 702. The bankruptcy court concluded that the mere relabeling of a derivative claim did not change its nature. Dexterity Surgical also went on to note weaknesses in the tortious interference theory. Id . at 700-01 (doubting the plaintiff could "show that Defendants acted so contrary to Dexterity's best interest that the Court could find that Defendants' actions were purely personally motivated"). That may be in tension with our later guidance that courts deciding who owns a claim should not consider whether the claim "will ultimately prove to be legally or factually valid." Seven Seas , 522 F.3d at 585.
Unlike the claim in Dexterity Surgical , Burton's is not a tortious interference claim in name only. It asserts an injury that does not depend on harm to the debtor. And the question of who owns the claim does not depend on whether Burton could *296 survive a motion to dismiss, much less prevail at trial. Id. Because the tortious interference claim Burton presses is based on an injury that is independent of any injury to the debtor, it belongs to him.
III.
That we readily find Burton's tortious interference claim to involve a direct rather than derivative injury does not mean that we have no concerns about the nature of the claim asserted. Our doubt, however, is not because we think the tortious interference claim might belong to the debtor. In this respect, this case does not resemble Seven Seas even though both sides agree that case provides the relevant framework. In Seven Seas both the creditors and the debtor had claims against consulting firms. See Seven Seas , 522 F.3d at 585. So the dispute was about which one was the proper plaintiff (or whether both could be). Id. But here the debtor was another potential defendant . Burton elected to pursue what could have been a bankruptcy claim as a tort claim against a solvent third party.
It thus seems at first blush that such an action could undermine the point of bankruptcy-to gather creditors together in one forum and settle their claims at once. Then again, Burton dismissed his claim against the estate and a successful lawsuit against a third party would not harm the debtor's reorganization. Nor would it be unfair to other creditors given our conclusion that the injury Burton is seeking to remedy is not derived from harm to the estate. In contrast, damages for an injury to the estate should be recovered by the trustee so all creditors can share in the proceeds. So perhaps the Seven Seas dichotomy between direct and derivative injuries also resolves many of our qualms about a claim that could be brought by a creditor against either the debtor or a third party. If a creditor decides to pursue a claim against a third party outside of bankruptcy, the requirement that the claim arise from a direct injury to that creditor ensures the separate suit does not put a reorganized debtor or other creditors in a worse position than they would otherwise be.
So the concern at most seems to be that claims like Burton's may chill secured creditors like Meridian from offering distressed financing and influencing prebankruptcy management.[3] But Meridian has pointed to no authority immunizing a nondebtor third party from being sued for any wrongful conduct merely because the plaintiff might have also had a remedy against the debtor. Both parties framed this case as one governed by the Seven Seas inquiry. Under that framework, the injury to Burton is a direct one. Whether a secured creditor like Meridian should enjoy any special protection from suit beyond the defenses parties ordinarily possess (and the limits that cost and uncertainty place on the filing of suits) is not a question before us in this limited jurisdictional *297 dispute asking whether Burton or the estate owns the tort claim.
* * *
Because the tortious interference claim alleging a direct injury to Burton is not property of the estate, there is no basis for bankruptcy court jurisdiction. The order remanding this case to state court is AFFIRMED.

Other circuits engage in a similar inquiry that focuses on whether the asserted injury is "inseparable from, and predicated upon, a legal injury to the estate." In re Bernard L. Madoff Inv. Securities LLC , 740 F.3d 81, 92-93 (2nd Cir. 2014) ; see also In re Icarus Holding, LLC , 391 F.3d 1315, 1321 (11th Cir. 2004) (looking at whether the creditor alleged only an "indirect" harm that flowed from the debtor's injury); Steinberg v. Buczynski , 40 F.3d 890, 893 (7th Cir. 1994) ("When a third party has injured not the bankrupt corporation itself but a creditor of that corporation, the trustee in bankruptcy cannot bring suit against the third party."). Instead of using the direct/derivative terminology, some courts speak in terms of whether a creditor's injury is "personal" (direct) or "general" (derivative). See, e.g. , Lumpkin v. Envirodyne Indus., Inc. , 933 F.2d 449, 463 (7th Cir. 1991). Regardless of the differing labels, the inquiry seems to be the same.

At oral argument, Meridian tried to characterize the injury as derivative by saying that the depletion of Buccaneer's assets is what made it unable to pay Burton his severance. Buccaneer's financial situation may have prevented it from paying Burton any damages, but Burton's injury (his termination) did not flow from any depletion of assets. Instead, as alleged, Meridian induced the breach to benefit Buccaneer. To illustrate this point, consider a scenario in which Buccaneer's fortunes improved after firing Burton. Burton would still have had an injury even if Buccaneer might have been able to compensate him for it. The termination injury Burton asserts thus does not depend on a depletion of Buccaneer's assets.

Secured creditors play an in increasing role in the lead up to bankruptcy. Especially those with liens over all the assets of the estate can influence board members during that time because the assumption is that they will be the equity owners after it. See David A. Skeel, Creditors' Ball: The "New" New Corporate Governance in Chapter 11 , 152 U. Pa. L. Rev. 917, 926-27, 931 (2003) ; Douglas G. Baird, Chapter 11 at Twilight , 56 Stan. L. Rev. 673, 697-98 (2003). Many commenters see this control as beneficial because it encourages companies to reorganize quickly and efficiently. See id. at 934 ; see also Douglas G. Baird & Robert K. Rasmussen, The End of Bankruptcy , 55 Stan. L. Rev. 751, 785 (2002) ("We are not troubled by such a shift in bankruptcy practice. As a comparative matter, the senior lender who will not be paid in full will more likely exercise control in a sensible fashion than will managers whose net worth depends on continuation ....").