In re VAN DRESSER CORPORATION,
Debtor.

Daniel M. HONIGMAN,
Plaintiff–Appellant,

v.

COMERICA BANK;  Grant A. Friley, III;
Wilma Brown, Defendants–Appellees.

No. 96–2179.

United States Court of Appeals,
Sixth Circuit.

Argued Sept. 18, 1997.

Decided Oct. 27, 1997.

Stephen F. Wasinger (argued and briefed), Honigman, Miller, Schwartz & Cohn, Detroit, MI, for Plaintiff–Appellant.

Donald J. Hutchinson (argued and briefed), Miller, Canfield, Paddock & Stone, Detroit, MI, for Defendants–Appellees.

Before: RYAN, SUHRHEINRICH, and DAUGHTREY, Circuit Judges.

## OPINION

RYAN, Circuit Judge.

Plaintiff Daniel M. Honigman appeals from the bankruptcy court's dismissal, affirmed by the district court, of his state law causes of action against defendants Comerica Bank, Grant A. Friley, III, and Wilma Brown. Honigman is a shareholder and creditor of the bankrupt debtor corporation, Van Dresser, and claims the defendants caused him to lose $1,125,000 by wrongfully taking $2.7 million from Van Dresser subsidiaries, thereby forcing Van Dresser to default on loans for which the plaintiff was the guarantor or co-signer.

Because Honigman's claim to recover a portion of the $2.7 million is the exclusive property of the Van Dresser bankrupt estate, the district court's judgment must be affirmed in that regard. However, the plaintiff may have a totally independent cause of action against the defendants for his costs in defending the suit to enforce his guarantees. Thus, the district court's order must also be reversed in part.

## I.

According to Honigman's complaint, he was a shareholder of Van Dresser Corporation. Van Dresser in turn owned two subsidiaries, Renaissance Manufacturing Company, or Renaissance, and Van Dresser Corporation/Westland, or Westland. Defendant Friley was president of Renaissance and manufacturing manager of Westland. Through various assumed names, Friley drained $2,746,511 from Renaissance and Westland, causing both subsidiaries and the parent, Van Dresser, to declare bankruptcy on July 11, 1991. The plaintiff alleges that Brown, a Comerica assistant branch manager, aided and abetted Friley in bilking Renaissance and Westland. Honigman further claims that Comerica, as Brown's employer, is vicariously responsible for the loss to these companies, and is directly liable for its failure to properly supervise Brown.

However, Honigman argues that he is not suing as a shareholder who has been injured by the loss of the value of his stock. Rather, he maintains that he had a direct relationship with Comerica giving rise to special duties owed to him personally, that he has sustained an injury separate and distinct from that inflicted on the debtors—Van Dresser, Renaissance, and Westland; and that therefore the defendants are liable to him *and* to the debtors' estates. He contends he has a "special relationship" by virtue of being a long-time borrower from Comerica. According to Honigman, Van Dresser obtained $225,000 from Comerica based solely on this relationship and his cosigning for the loan. Honigman also guaranteed another $900,000 in loans to Van Dresser. When Van Dresser defaulted on these loans, Honigman was forced to repay them himself, incurring a loss of $1,125,000 plus costs and attorney fees in defending the collection actions.

Importantly, Renaissance and Westland have already recovered a portion of the lost

$2.7 million from Comerica. On November 7, 1995, the trustees for these two bankrupt companies mailed to all creditors, including Honigman, a notice of a proposed settlement with Comerica for $200,000. Honigman did not object, and the bankruptcy court entered an order approving the settlement on December 4, 1995. Also, the bankrupt estates are also currently proceeding against Friley and Brown.

Honigman sued all three defendants in state court, alleging conversion, breach of fiduciary duty, civil conspiracy, negligent supervision of an employee, and aiding and abetting these tortious actions. Comerica removed the case to the bankruptcy court that had jurisdiction over the debtors' estates. Honigman then unsuccessfully moved to have his case remanded to state court. Subsequently, the bankruptcy court granted Comerica and Brown's motion to dismiss Honigman's complaint. The district court affirmed, holding that Honigman's claim was derivative, that it was the exclusive property of the debtors' estates, and that therefore, he had no standing to sue.

## II.

■ Honigman's basic contention on appeal is that Michigan law allows him to recover *personally* from Comerica, Friley, and Brown, *in addition* to any recovery against these defendants by the bankruptcy trustees. He also argues that, although Michigan law may be equivocal on this point, abstention principles require federal courts to defer to Michigan state courts to resolve the issue. Comerica counters that the bankruptcy court has jurisdiction over all claims that are property of a debtor's estate. The bankruptcy court, then, must identify the claims over which it has jurisdiction, and cannot leave such decisions up to state courts. Comerica contends that even if Honigman could validly assert a claim in state court absent the bankruptcy proceedings at issue here, the bankruptcy code changes this outcome. The code gives the trustee the *exclusive* right to prosecute any claim held by a bankrupt estate. Because the tortious conduct Honigman alleges also injured the debtors, only the debtors' estates can recover from the defendants.

■ Property of a debtor's estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). "The commencement of the case" is the moment the debtor files for bankruptcy. *Koch Ref. v. Farmers Union Cent. Exch., Inc.,* 831 F.2d 1339, 1343 (7th Cir.1987). And it is "well established that the 'interests of the debtor in property' include 'causes of action.'" *Bauer v. Commerce Union Bank,* 859 F.2d 438, 441 (6th Cir.1988). A debtor's appointed trustee has the *exclusive* right to assert the debtor's claim. *Schertz–Cibolo–Universal City, Indep. Sch. Dist. v. Wright (In re Educators Group Health Trust),* 25 F.3d 1281, 1284 (5th Cir.1994). "If, on the other hand, a cause of action belongs *solely* to the estate's creditors, then the trustee has no standing to bring the cause of action." *Id.* (emphasis added).

■ Whether a creditor has sole right to a cause of action is determined in accordance with state law. *Oakland Gin Co. v. Marlow (In re The Julien Co.),* 44 F.3d 426, 429 (6th Cir.1995). However, if the debtor could have raised a state claim at the commencement of the bankruptcy case, then that claim is the exclusive property of the bankruptcy estate and cannot be asserted by a creditor. *In re Educators Group Health Trust,* 25 F.3d at 1284. "Conversely, if the cause of action does not explicitly or implicitly allege harm to the debtor, then the cause of action could not have been asserted by the debtor as of the commencement of the case, and thus is not property of the estate." *Id.* Thus, if Honigman's state claims could have been brought by Van Dresser or its subsidiaries on July 11, 1991, then the plaintiff is barred from pursing them now.

Under the facts alleged in Honigman's complaint, both he and Van Dresser could state Michigan law claims for damages against Comerica, Friley, and Brown. The only question is whether *both* Honigman and Van Dresser could *recover* on their claims. If a judgment against these defendants by either Honigman or Van Dresser in state court precluded the other from a subsequent recovery, then the claims are not truly inde-

pendent, and by default the claims are exclusively property of the trustees in bankruptcy.

In arguing that both he and Van Dresser could recover in state court, the plaintiff relies heavily on an unpublished case arising in this circuit. *Bank of New England, N.A. v. M.L. Holding Corp.*, Civil Action No. 87–71378 (E.D.Mich.1989), *aff'd* 946 F.2d 894 (6th Cir.1991) 1991 U.S.App. LEXIS 25534 (*per curiam*). However, in addition to being unpublished, and thus not binding on this court, the holding of *Bank of New England* is unhelpful here. In that case, the district court dismissed many, but abstained from deciding other, claims of a debtor's guarantor. Notably, the court dismissed the guarantor-shareholder's claims that the defendant (1) breached a duty of care it owed him, (2) converted his personal assets, (3) interfered with his commercial and contractual relations, and (4) made fraudulent and negligent representations to him. The court reasoned that these claims belonged to the debtor because the guarantor-shareholder had failed to demonstrate a separate and distinct injury, and therefore he could not bring the claims personally. On the other hand, the court dismissed without prejudice several other claims, including that defendant defamed the guarantor-shareholder, that defendant was liable for contribution or indemnity if the guarantor was held liable to the lending institution, and that defendant breached a contract with the guarantor. Unfortunately, the court did not discuss the distinction it made between these counts.

Similarly, on appeal, this court did not provide much guidance for future cases. We merely noted that a shareholder may not maintain a derivative claim, but where the injury is "separate and distinct" from that of other shareholders generally, the shareholder may sue. Notably, this court did indicate that the shareholder could re-allege the dismissed claims in state court if they arose out of his status as a creditor of the debtor and were separate and distinct. *Id.* at *9. Thus, at most, *Bank of New England* merely confirms that a shareholder-creditor's claims must be "separate and distinct" from the debtor's. It provides no help in determining what is "separate and distinct."

Honigman also relies on *Christner v. Anderson, Nietzke & Co.*, 433 Mich. 1, 444 N.W.2d 779, 783 (1989). However, that case did not involve a debtor-in-bankruptcy, nor did it resolve the issue of whether a corporation and a shareholder could *both* recover under circumstances such as here. Instead, the court held that, in certain instances, a cause of action is not the *sole* property of a corporation. The court quoted approvingly 19 Am.Jur.2d, Corporations, § 2245: " 'A stockholder may individually sue ... persons when he has sustained a loss separate and distinct from that of other stockholders generally.' " *Christner*, 444 N.W.2d at 783. However, it is clear that all the *Christner* court meant was that a shareholder sometimes can recover when the corporation cannot or does not pursue its own cause of action. *See id.*

The plaintiff has cited no case for the proposition that a corporation and its shareholder can both recover fully for a single tortious action, and we conclude that none exists. The absence of case law on this point is not surprising, in light of the fact that the result for which Honigman argues cannot logically be sustained. The defendants here allegedly took a finite amount of money from Renaissance and Westland. Although they may be liable for additional sums such as attorney fees, costs, and even treble damages, they cannot be required to repay the principal amount of $2.7 million more than once. If a thief steals a diamond necklace from a married couple, the husband cannot recover the value of the converted necklace from the thief after the wife has already recovered the necklace itself.

Stated differently, if Honigman had slipped and fallen on a negligently maintained floor at Comerica's offices, he could recover irrespective of his status as Van Dresser shareholder. However, the estates' recovery here against Comerica makes Honigman whole in terms of the loss caused by Comerica. Although Honigman maintains that the trustees' minimal settlement with Comerica is in effect an abandonment of the estates' claim, his failure to object to the proposal precludes his argument that the settlement was anything less than a fair com-

promise of Comerica's potential liability. Simply put, the debtors' estates can, and did, recover from Comerica for Honigman and Van Dresser's common damages. Any recovery by the plaintiff would benefit him twice; once as guarantor and again as creditor. Instead, Honigman must recoup whatever portion he can of the $1,125,000 from the bankrupt estates. And, although the estates have not yet recovered against Friley and Brown, the same logic applies in those cases. The estates' recovery takes precedence over Honigman's. Only if the trustees truly abandon their claims against the remaining two defendants may Honigman proceed against them in state court.

■ However, despite the fact that Honigman cannot recover the $1,125,000 he was required to pay to various financial institutions, his costs in defending those actions *may* be reimbursable. That is, the estates presumably did not have to defend the collection actions against Honigman, and in any case they could not bring claims for Honigman's own costs and attorney fees. Thus, Honigman may proceed in state court, and if Michigan law allows him—and only him—to recover for the costs of defending the collection actions, such claims would not be property of the bankruptcy estates.

### III.

Therefore, the district court is **AFFIRMED** in part and **REVERSED** in part. Honigman may not seek recovery of the $1,125,000 principal loss. However, his claims for costs and attorney fees arise solely under state law and do not involve the debtors' estates, and so they should be **REMANDED** to state court for determination.