In re REAL MARKETING SERVICES, LLC, Debtor.

e–Realbiz.com, LLC
Appellant/Defendant,

v.

Protocol Communications, Inc.; Protocol Services, Inc.; Leslie T. Gladstone, Trustee of the Chapter 11 Bankruptcy Estate of Real Marketing Services, LLC, Appellees/Plaintiffs.

No. 03–CV–1536 LAB(POR).

United States District Court,
S.D. California.

March 17, 2004.

Rick Richmond, Bennett L. Spiegel, Eric W. Hagen, Kirkland & Ellis LLP, Los Angeles, CA, for plaintiffs.

Jay D. Hanson, Jeffry A. Davis, Gray, Cary, Ware & Freidenrich LLP, San Diego, CA, for trustee.

Brent Zadorozny, Beverly Hills, CA, for defendant.

## ORDER AFFIRMING BANKRUPTCY COURT'S ORDERS GRANTING MOTIONS FOR JUDGMENT ON THE PLEADINGS AND FOR SUMMARY JUDGMENT

BURNS, District Judge.

Appellant/Defendant e-Realbiz.com, LLC ("e-Realbiz," "appellant") has appealed the orders of the bankruptcy court granting the motions of Appellees/Plaintiffs Protocol Communications, Inc., Protocol Services, Inc., (collectively, "Protocol") and Leslie T. Gladstone, the Chapter 11 Trustee, (collectively, "appellees") for judgment on the pleadings and for summary judgment. For the reasons given below, the Court AFFIRMS the bankruptcy court's orders.

## I. BRIEF OVERVIEW

This case is an appeal of two judgments of The Honorable Louise Adler, Bankruptcy Judge for the Southern District of California. Appellees filed an adversary proceeding in the Chapter 11 bankruptcy proceeding of Real Marketing Services, LLC, ("RMS") seeking a determination of who owns the causes of action asserted by e-Realbiz in a district court action e-Realbiz had filed in 2001 against Protocol. Appellees successfully moved for judgment on the pleadings with respect to certain of the causes of action and later successfully moved for summary judgment on the remaining claims. e-Realbiz appealed the orders to this court, which has jurisdiction pursuant to 28 U.S.C. § 158(a). The factual and procedural history of the case, provided in the light most favorable to appellant, draws from e-Realbiz's complaint in its action in the Central District of California ("CDC"), appellees' First Amended Complaint in the adversary proceeding ("FAC"), and appellant's Amended Answer in the adversary proceeding ("AA").

## II. FACTUAL AND PROCEDURAL BACKGROUND

In late 1999, RMS, the Chapter 11 debtor in this case, began discussions with Protocol regarding a potential acquisition of substantially all of RMS' assets by Protocol. FAC ¶ 13, AA ¶ 1. The parties executed a term sheet regarding the sale in May 2000. FAC ¶ 14, AA ¶ 4. According to the term sheet, RMS, a limited liability corporation whose managing member is e-Realbiz, was the "seller" and Protocol was the "buyer." FAC ¶ 15, AA ¶ 1; FAC ¶ 1, AA ¶ 1. The term sheet stated a purchase price for RMS' assets as $4.2 million and identified debt that RMS owed e-Realbiz and that Protocol would assume as part of the purchase price, amounting to $4.4 million in total. FAC ¶ 19, AA ¶ 1. Following the execution of the term sheet, RMS and Protocol engaged in detailed discussions about a formal Asset Purchase Agreement ("APA") through which Protocol would acquire RMS' assets and assume its liabilities. FAC ¶ 20, AA ¶ 1. What

followed is a matter of dispute: Protocol asserts that it never consummated the APA or the acquisition of RMS while e-Realbiz alleges that the agreement was actually executed (FAC ¶ 22, AA ¶ 6, CDC ¶ 14).

On December 29, 2000, e-Realbiz filed an involuntary petition for relief against RMS pursuant to Chapter 11 of Title 11 of the United States Code, 11 U.S.C. § 101 *et seq.* FAC ¶ 1, AA ¶ 1. On January 31, 2001, the bankruptcy court entered an order for relief against RMS. FAC ¶ 2, AA ¶ 1. On June 22, 2001, RMS applied to the bankruptcy court to employ attorney Brent Zadorozny as counsel to pursue the collection of accounts receivable from RMS' customers. FAC ¶ 23, AA ¶ 1. In that application, RMS claimed that it "believes it may have a claim against Protocol...for damages arising out of the misrepresentations made by Protocol regarding its intent to purchase RMS." FAC ¶ 23, AA ¶ 1. However, RMS to date has not brought suit against Protocol on such a claim.

On December 21, 2001, e-Realbiz filed an action against Protocol in the Central District of California for damages stemming from the alleged breach of the APA. FAC ¶ 27, AA ¶ 8. In its complaint, appellant asserted claims for (1) breach of contract; (2) third-party beneficiary; (3) breach of the covenant of good faith and fair dealing; (4) fraud; (5) intentional misrepresentation; (6) negligent misrepresentation; (7) intentional interference with contractual relations; (8) intentional interference with prospective economic relations; (9) negligent interference with prospective economic relations; (10) civil conspiracy; (11) misappropriation of trade secrets; (12) unfair trade practices; (13) negligent supervision; and (14) promissory estoppel. FAC ¶ 27, AA ¶ 8, CDC ¶¶ 9–104. Mr. Zadorozny represented e-Realbiz in the Central District case, as he now does in the instant matter, and as he represents RMS in the Chapter 11 proceeding. FAC ¶ 40, AA ¶ 1.

On August 15, 2002, the bankruptcy court, having begun this adversary proceeding, granted Protocol's request for a preliminary injunction preventing e-Realbiz from prosecuting the Central District lawsuit until a determination was made regarding the ownership of the APA claims. The court, in a written order issued on September 24, 2002, stated that e-Realbiz was, "at best, attempting to assert claims it holds in common with RMS without including RMS in the District Court action and, at worst, usurping RMS's right to assert those claims on its own behalf." On August 21, 2002, the bankruptcy court appointed Leslie T. Gladstone as trustee and instructed her to conduct an independent investigation into the ownership of the APA claims as an aid in the court's decision as to whether or not to permanently enjoin e-Realbiz from pursuing the claims.

On December 18, 2002, Protocol filed a motion for judgment on the pleadings, alleging that e-Realbiz's district court complaint asserted claims that belonged to RMS' bankruptcy estate and that could not be pursued in district court. On December 19, 2002, Trustee submitted her report on ownership of the claims, concluding that the causes of action belonged to RMS. On March 5, 2003, Protocol and Trustee entered into a settlement agreement to resolve their disputes, including those stated in e-Realbiz's original complaint. This settlement, however, remains contingent on a final conclusion that RMS, and not e-Realbiz, owns the claims in question. The bankruptcy court approved the settlement without the objection of any of the parties on October 31, 2003.

On March 6, 2003, the bankruptcy court issued a tentative denial of the motion for judgment on the pleadings, stating among other conclusions that Trustee was the proper party to request a permanent injunction and that e-Realbiz may have a claim independent of RMS for $200,000 for assumption of debt. Following this tentative ruling, Trustee joined Protocol in a First Amended Complaint. Appellees then filed an amended motion for judgment on the pleadings on June 16, 2003. On July 16, 2003, the bankruptcy court granted appellees' motion with respect to all but the seventh, eighth, and ninth causes of action for tortious interference. The court held that RMS' bankruptcy estate was the sole and exclusive owner of the majority of the claims. e-Realbiz filed a Notice of Appeal of the judgment on the pleadings.

Following discovery on the remaining claims, Protocol and Trustee moved for summary judgment with respect to those claims. e-Realbiz declined to oppose the motion, asserting that the judgment on the pleadings, which it was appealing, vitiated its arguments with respect to the interference claims. On September 18, 2003, the bankruptcy court granted summary judgment to appellees on the interference claims. In late September, e-Realbiz appealed the summary judgment as well and the two appeals were consolidated, by stipulation of the parties, on November 5, 2003. The entire case had earlier in October been transferred by the Honorable Irma E. Gonzalez to this court.

Appellant filed its memorandum of points and authorities on appeal on January 5, 2004. Appellees submitted their brief on February 2, 2004. Appellant filed its reply brief on February 17, 2004. On February 23, 2004, the court took the matter under submission, without oral argument, pursuant to Civil Local Rule 7.1(d)(1).

## III. DISCUSSION

### A. *Standard Of Review And Standards For Motions For Judgment On The Pleadings And For Summary Judgment*

This court, sitting in appellate jurisdiction pursuant to 28 U.S.C. § 158(a), reviews a judgment on the pleadings and summary judgment *de novo. Alford v. DCH Found., Group Long–Term Disability Plan,* 311 F.3d 955, 957 (9th Cir.2002); *McGann v. Ernst & Young,* 102 F.3d 390, 392 (9th Cir.1996).

Under Rule 12(c) of the Federal Rules of Civil Procedure, a court may grant judgment on the pleadings when, considering all material factual allegations in the nonmoving party's pleadings as true, the moving party is entitled to judgment as a matter of law. *Geraci v. Homestreet Bank,* 347 F.3d 749, 751 (9th Cir.2003); *see also General Conference Corp. of Seventh–Day Adventists v. Seventh–Day Adventist Congregational Church,* 887 F.2d 228, 230 (9th Cir.1989). According to the rule, any party may file a 12(c) motion. The court is not bound by the nonmoving party's legal characterization of the facts. *National Fidelity Life Ins. Co. v. Karaganis,* 811 F.2d 357, 358 (7th Cir.1987); *see also Sprewell v. Golden State Warriors,* 266 F.3d 979, 988 (9th Cir.2001) (holding that the court need not consider conclusory or legal characterizations when hearing a motion to dismiss for failure to state a claim).

A district court will grant summary judgment when, viewing the facts in the light most favorable to the nonmoving party, there exist no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c); *see Arpin v. Santa Clara*

*Valley Transp. Agency*, 261 F.3d 912, 919 (9th Cir.2001).

### B. *Legal Standards For Ownership Of Causes Of Actions In Bankruptcy Cases*

██ According to 11 U.S.C. § 541(a)(1), the property of a bankruptcy estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case." Section 541 includes causes of action. *Sierra Switchboard Co. v. Westinghouse Electric Corp.*, 789 F.2d 705, 707 (9th Cir.1986). The trustee of the debtor holds the exclusive right to assert the debtor's claim. *Honigman v. Comerica Bank (In re Van Dresser Corp.)*, 128 F.3d 945, 947 (6th Cir.1997), *citing Schertz–Cibolo–Universal City, Indep. Sch. Dist. v. Wright (In the Matter of Educators Group Health Trust)*, 25 F.3d 1281, 1284 (5th Cir.1994).[1] Put differently, if the debtor could have raised a claim at the commencement of the bankruptcy case, the claim becomes the exclusive property of the bankruptcy estate and cannot be asserted by a creditor. *In re Van Dresser* 128 F.3d at 947. In addition, if a judgment in another court against a defendant by either the debtor or another party asserting the debtor's claims precluded the other from recovery, then the other party's claims are not independent and instead belong exclusively to the debtor. *See Id.* at 947–48. However, if the trustee abandons the claims then the other party may pursue them in another court. *Id.* at 949.

██ An action is derivative of the corporation's rights, and hence not independent of them, if "the gravamen of the complaint is injury to the corporation...or it seeks to recover assets for the corporation or to prevent the dissipation of its assets." *PacLink Communications Int'l, Inc. v. Super. Ct.*, 90 Cal.App.4th 958, 964, 109 Cal.Rptr.2d 436 (2001), *citing Jones v. H.F. Ahmanson & Co.*, 1 Cal.3d 93, 106–7, 81 Cal.Rptr. 592, 460 P.2d 464 (1969). With regard to limited liability corporations ("LLC's"), members of an LLC hold no direct ownership interest in the company's assets and therefore are not directly injured when the company suffers an improper deprivation of those assets. *PacLink*, 90 Cal.App.4th at 964, 109 Cal. Rptr.2d 436. Whether or not a claim belongs to the bankruptcy estate or another party may depend on the substantive law of the state in which the claim is being asserted. *CBS, Inc. v. Folks (In re Folks)*, 211 B.R. 378, 384 (9th Cir.BAP1997).

### C. *Ownership Of The Claims Against Protocol*

██ e–Realbiz is appealing the bankruptcy court's determination that the claims arising from the APA negotiations belong exclusively to RMS' bankruptcy estate. Protocol and Trustee contend that the bankruptcy court arrived at the correct conclusion. As a preliminary matter, e-Realbiz argues that the court must, at the judgment on the pleadings or summary judgment stage, credit its allegations that certain claims are "totally and absolutely the property of E–Realbiz." (AA ¶ 8). Yet while the court must assume that appellant's factual assertion are true, the court need not defer to e-Realbiz's legal characterizations or ultimate conclusions. *See Sprewell v. Golden State War-*

---

1. Although *In re Van Dresser* is a Sixth Circuit case and although no published Ninth Circuit authority cites the above proposition as precedent, there is no available caselaw in the Ninth Circuit or other circuits to the contrary and at least two unpublished Ninth Circuit memorandum decisions cite *In re Van Dresser* and *In re Educators* approvingly. *See Strong v. Prudential Ins. Co. of America*, 1999 WL 77961 (9th Cir.1999); *In re Cho*, 9 Fed.Appx. 633 (9th Cir.2001).

*riors*, 266 F.3d at 988. Bearing this distinction in mind, the court will analyze the fourteen causes of action in four groups: the breach of contract claims, the debt assumption claims, the misrepresentation claims, and the interference claims. The court also observes that Trustee has not abandoned the claims but on the contrary has concluded a conditional settlement agreement. *See In re Van Dresser*, 128 F.3d at 949.

### 1. Breach Of Contract

■ e–Realbiz argues that Protocol's behavior in breaching the APA caused damage not only to RMS but also to e-Realbiz independently of RMS. To this end, appellant cites several district court cases from outside of this circuit that stand for the proposition that when a defendant's conduct damages the corporation as well as, separately, a shareholder, the shareholder may seek relief directly. *See In re Enron Corp.*, 292 B.R. 507, 511–12 (S.D.N.Y.2002) (interpreting Texas law); *In re Granite Partners*, 194 B.R. 318, 324–5 (Bankr.S.D.N.Y.1996). In other words, if the shareholder suffers injury distinct from that of the corporation then the shareholder may bring an independent action. In this case, e-Realbiz argues that it alleged in the CDC and in its answer in the adversary proceeding that it had specific, independent rights under the APA. Only a factual dispute remains, according to appellant, about the intent of the parties when signing the document.

■ Yet the cases appellant cites state no legal principle any more favorable to its position than the standards set forth in *In re Van Dresser* or *PacLink, supra.* If a defendant's conduct inflicts an independent harm upon a shareholder, then the share-

holder owns a separate cause of action. *See In re Van Dresser*, 128 F.3d at 947. Here, e-Realbiz's mere conclusory assertion that it owned specific rights under the APA does not on its own preclude the award of judgment on the pleadings. According to the APA, and as acknowledged by e-Realbiz, RMS was defined as the "seller" of its assets although RMS, a limited liability corporation, would pass along half of the sale proceeds, after extinguishing debts, to appellant, a member of the LLC. FAC ¶ 41, AA ¶ 14.[2] Thus, when Protocol allegedly breached the contract, RMS received no sale proceeds and, accordingly, neither did e-Realbiz. Therefore, considering as true e-Realbiz's factual assertions, including its allegation that it owned certain rights in the contract that were distinct from those of RMS, the damage appellant suffered derives from RMS' damages and appellant thus has no cause of action independent of RMS' claim for breach. *See PacLink*, 90 Cal.App.4th at 964, 109 Cal.Rptr.2d 436. Accordingly, the Court concludes as a matter of law that the breach of contract action belongs exclusively to the RMS bankruptcy estate.

### 2. Debt Assumption Claims

■ e–Realbiz also argues that under the APA, $220,000 was earmarked for payment directly to e-Realbiz to extinguish debts RMS had owed appellant. e-Realbiz asserts that it was the direct intended beneficiary of the contract that RMS and Protocol solemnized in the APA. Appellant contends that under New York law, the intent of the parties governs the interpretation of a contract and here the parties intended for Protocol to pay e-Realbiz $220,000 in order to liquidate RMS' debt to appellant. e-Realbiz cites *Kaplan v. First*

---

**2.** These proceed-splitting allegations do not appear in the original complaint in the Central District. However, in the interest of thoroughness and fairness to the non-moving party, the court will treat them as if they were properly alleged.

*Options of Chicago, Inc. (In re Kaplan),* 143 F.3d 807 (3d Cir.1998) for the proposition that the intent to benefit a third-party suffices to permit the party to file a breach of contract action independent of the bankrupt estate. Appellant further cites *In re Enron* to the effect that "if there is a contract or other liability of which the stockholder personally is the beneficiary, the cause of action arises to him as with any other cause of action he might have under the same circumstances." *In re Enron,* 292 B.R. at 511, *citing Cullum v. Gen. Motors Acceptance Corp.,* 115 S.W.2d 1196, 1201 (Tex.Civ.App.1938). Thus, according to appellant, because the parties intended to benefit e-Realbiz, the bankruptcy court should not have determined as a matter of law that the claim belonged exclusively to RMS.

However, appellant misconstrues *In re Kaplan,* a Third Circuit case. There, most importantly, the *debtor,* one Manuel Kaplan, sought to bring an action against a defendant who had allegedly harmed both the debtor and his corporation, MKI. *In re Kaplan,* 143 F.3d at 811. The court held that because he entered into a workout agreement with the defendant that was supported by independent consideration, he could bring suit in an individual capacity. *Id.* at 812–13. Here, by contrast, the shareholder, e-Realbiz, is *not* the debtor, nor was the benefit of which it claims to have been deprived supported by consideration independent of that provided by RMS. In this case, in exchange for selling its assets to Protocol, RMS received the sale proceeds and extinguished its various debts. Thus, any benefit e-Realbiz would have received under the APA would have derived from RMS' benefit. Furthermore, RMS retained the right, under Section 1.2(a) of the agreement, to enforce Protocol's obligation to discharge the liabilities RMS had incurred to its detriment. Appellant's citation to *In re Enron,* a South-

ern District of New York case citing Texas law, is similarly inapposite. In this case, unlike in *Enron* or *Cullum, both* the equity holder, e-Realbiz, and the corporation, RMS, stood to benefit from Protocol's alleged promise under the APA to pay RMS' debts to appellant.

Put differently, if e-Realbiz is allowed to recover from Protocol the debts RMS owes appellant, RMS would be precluded from recovering those monies on its own. Such preclusive effect renders the action derivative, and not independent. *In re Van Dresser,* 128 F.3d at 947–48. While e-Realbiz objects that a stay of the action under 11 U.S.C. § 362(a) might be more appropriate than a judgment that RMS owns its claims, the preclusion analysis is the same; if e-Realbiz's action for recovery of the debt is allowed to proceed, the bankruptcy estate's interests will be harmed. Instead, appellant's proper courses of action include either collecting its $220,000 from RMS like any other creditor or awaiting the conclusion of the bankruptcy proceedings before seeking recovery of the debt from Protocol. Therefore, the Court, considering as true e-Realbiz's factual allegations, concludes as a matter of law that the claim to enforce Protocol's promise to repay RMS' debt belongs to RMS.

### 3. *The Misrepresentation Claims*

■ e–Realbiz next argues that its causes of action for fraud, intentional misrepresentation, and negligent misrepresentation involve damages only to e-Realbiz and therefore cannot be the property of RMS' bankruptcy estate. According to e-Realbiz, appellant detrimentally relied on and suffered detriment from Protocol's misrepresentations by making loans to RMS that it believed Protocol would repay. Appellant contends that RMS did nothing in detrimental reliance, nor did it

actually suffer detriment, with respect to the loans it received from e-Realbiz. Appellant states that nothing in the pleadings indicates any such reliance because RMS needed the loan money to survive regardless of whether or not Protocol intended to repay the loans. Thus, according to e-Realbiz, because RMS neither detrimentally relied on Protocol's promises nor suffered any actual detriment, these causes of action belong only to e-Realbiz.

However, appellant mischaracterizes the pleadings and underappreciates the harm RMS did in fact allegedly suffer. In the complaint appellant presented in the Central District, e-Realbiz repeatedly refers to the detrimental reliance in which RMS engaged on the basis of Protocol's actions. Appellant asserts, for instance, that "[e-Realbiz] and RMS justifiably relied on PROTOCOL's expressed intent to acquire the assets of RMS on the terms set forth in [the Term Sheet and the APA], and based upon that reliance acted to their detriment." CDC ¶ 41; *see also* ¶¶ 40, 42, 43, 49, 57.[3] Thus, the district court pleading very clearly alleges both detriment and detrimental reliance on the part of RMS.

Furthermore, even if the pleadings did not mention RMS' role in the APA, RMS necessarily relied on and suffered detriment from Protocol's alleged promises in the same way as e-Realbiz. Contrary to appellant's argument, by incurring debt it was required to repay to e-Realbiz, RMS also detrimentally relied on Protocol's alleged promise to extinguish the debt and suffered actual detriment when that promise was allegedly breached. Just as e-Realbiz claims Protocol's actions induced it to advance RMS the loans, so too did RMS incur detriment when it shouldered a burden of debt on the basis of Protocol's alleged promise to repay. With respect to the loans, the claims are inherently intertwined. Thus, taking as true appellant's factual claims, the Court concludes as a matter of law that the actions for misrepresentation involve both RMS and e-Realbiz and the claims therefore belong to RMS' bankruptcy estate.

#### 4. *Interference Claims*

█ Finally, e-Realbiz argues that its claims for interference with contractual and economic relations involve only appellant and not RMS. Appellant also contends that the pleadings asserted no cause of action on behalf of RMS. Specifically, e-Realbiz asserts that Protocol's alleged failure to satisfy its obligations under the APA harmed e-Realbiz's relationship with National Fulfillment Marketing, Inc. ("NFM"), the other member of the RMS LLC. Although e-Realbiz did not oppose Protocol's summary judgment motion in bankruptcy court, it argues that the damage Protocol inflicted on e-Realbiz's relationship with NFM did not concern RMS and therefore could be remedied by appellant in its own action.

However, in its pleadings and in various discovery documents e-Realbiz indicates that its interference actions, like its misrepresentation claims, involve RMS as well as itself. In its original complaint, e-Realbiz repeatedly invokes RMS as relying on and suffering damage to its economic rela-

---

**3.** In its reply brief, appellant asserts that "[t]here are no allegations in the District Court Action that RMS relied upon anything that Protocol did in taking the money from the loans." Appellant's Reply Brief at 5. Yet in the sixth cause of action in the complaint, the negligent misrepresentation count, e-Realbiz charges that Protocol "made these repre-

sentations...with the intent to induce...Plaintiff and RMS to sell the business to Defendants, to make the loans and equity investments alleged herein...to e-Realbiz's and RMS' detriment." CDC ¶ 57. Thus, the complaint very specifically ties RMS' reliance and detriment to Protocol's actions with respect to the loans.

tionships from Protocol's alleged promise. *See, e.g.,* CDC ¶¶ 61, 70, 71, 76. In each interference count, e-Realbiz alleges that both RMS and RMS' relationship with appellant were harmed by Protocol's actions. Furthermore, in several contention interrogatories, e-Realbiz asserts that Protocol's promises under the APA adversely affected the relationships between RMS, e-Realbiz, and NFM. *See* Pl.'s Response to Def. Russ Uhlman's First Set of Interrogatories, Interrogatory and Response No. 3. Finally, in its application to the bankruptcy court for leave to appeal, e-Realbiz forthrightly acknowledges RMS' centrality in the interference claims, stating that "all damages flowing from Protocol's interference with this relationship [between e-Realbiz and NFM] necessarily arise from, implicate and to some extent include interference with the relationship between E–Realbiz and RMS." Appellant's Application for Leave to Appeal ¶ 11. e-Realbiz admits that the interference claims inherently involve allegations of harm to RMS, the LLC of which both appellant and NFM are the sole members. Appellant, in failing to recite damages particular to itself, cannot resolve these causes of action without at least implicating RMS' rights. Thus, the Court concludes that there exists no genuine issue of material fact that the interference claims properly belong to RMS' bankruptcy estate.

## IV. CONCLUSION

For the reasons given above, the bankruptcy court's judgment on the pleadings and summary judgment that the causes of action brought by appellant in the Central District of California are the property of RMS are **AFFIRMED.**

**IT IS SO ORDERED.**