**In re NICOLE GAS PRODUCTION, LTD., Debtor.**

No. 09–52887.

United States Bankruptcy Court,
S.D. Ohio,
Eastern Division,
at Columbus.

Sept. 27, 2013.

James A. Lowe, Individually and as Counsel for Freddie L. Fulson.

Anne Owings Ford, Sean D. Malloy, McDonald Hopkins LLC, Cleveland, OH, Counsel for TCO.

1. The Court has jurisdiction to hear and determine this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the general order of reference entered in this district. This is a core proceeding. *See* 28 U.S.C. § 157(b)(2).

2. A copy of the Complaint is attached as Exhibit 1 to the Motion.

3. The filing of a bankruptcy petition triggers an automatic stay that puts a halt to all credi-

*ORDER DIRECTING FREDDIE L. FULSON, JAMES A. LOWE AND ROBERT C. SANDERS TO APPEAR AND SHOW CAUSE WHY THEY SHOULD NOT BE HELD IN CIVIL CONTEMPT*

JOHN E. HOFFMAN, JR., Bankruptcy Judge.

The Chapter 7 trustee of the bankruptcy estate of Nicole Gas Production, Ltd. ("Debtor" or "NGP"), Frederick L. Ransier ("Trustee"), has filed a motion ("Motion") (Doc. 119) requesting that the Court enter an order directing Freddie L. Fulson, Robert C. Sanders and James A. Lowe (collectively, "Fulson Parties") to "appear and show cause as to why each should not be held in civil contempt and sanctioned for violating the automatic stay and attacking the jurisdiction and orders of this Court." Mot. at 10. In addition, the Trustee requests that the Court, if it holds the Fulson Parties in contempt, also award him reasonable attorneys' fees and costs associated with prosecuting the Motion. *See id.* at 11.[1] As explained below, the Fulson Parties violated the automatic stay by filing a state court complaint asserting a cause of action that is property of the Debtor's bankruptcy estate ("Complaint").[2] The Court, therefore, directs the Fulson Parties to appear and show cause why they should not be held in civil contempt for violating the automatic stay.

**The Court's Authority to Hold the Fulson Parties in Civil Contempt**

 Bankruptcy courts have the authority to enforce the automatic stay[3] by levy-

tor collection efforts and safeguards property of the bankruptcy estate. *See* 11 U.S.C. § 362(a). Among other things, § 362(a) stays "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." 11 U.S.C. § 362(a)(3).

ing sanctions against parties who take actions in violation of the stay. Section 362(k)(1) of the Bankruptcy Code provides that "an *individual* injured by any willful violation of a stay provided by this section shall recover actual damages including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." 11 U.S.C. § 362(k)(1) (emphasis added). There is a split of authority on the question of whether a trustee is an "individual" for purposes of § 362(k)(1). *Compare Havelock v. Taxel (In re Pace)*, 67 F.3d 187, 193 (9th Cir.1995) (holding that the Chapter 7 trustee was not an "individual" for purposes of § 362(h)),[4] *and Rushton v. Bank of Utah (In re C.W. Mining Co.)*, 477 B.R. 176, 194 (10th Cir. BAP 2012) ("Based on the well-established precedent of this Court and other circuits, and the plain language of § 362(k), the Court concludes that a trustee acting on behalf of the estate, which is an artificial entity, cannot recover damages under § 362(k) for a violation of the automatic stay."), *with Martino v. First Nat'l Bank of Harvey (In re Garofalo's Finer Foods, Inc.)*, 186 B.R. 414, 439 (N.D.Ill.1995) ("[I]n the absence of clear language to the contrary, this court declines to apply the narrow definition of 'individual' adopted by the bankruptcy court and the Ninth Circuit and instead finds that a chapter 7 trustee is an 'individual' for the purposes of section 362[k]"), *and Bohm v. Howard (In re Howard)*, 428 B.R. 335, 339 (Bankr. W.D.Pa.2010) ("[T]his Court concludes that the Trustee does have standing to prosecute a motion and/or complaint for

damages pursuant to 11 U.S.C. § 362(k) because it seems unlikely that Congress intended to exclude bankruptcy trustees from the protections afforded by Section 362 of the Bankruptcy Code."), *aff'd sub nom. United Bank, Inc. v. Howard (In re Howard)*, No. 2:10cv962, 2011 WL 578777 (W.D.Pa. Feb. 9, 2011). The Court need not weigh in on this issue, however, because it has a second source of authority to levy sanctions for violations of the automatic stay—its general equitable powers under § 105(a) of the Bankruptcy Code, which provides that the Court "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). *See Pace*, 67 F.3d. at 193 ("It is clear that, even though a trustee does not qualify as an 'individual' for purposes of section 362[k], a trustee can recover damages in the form of costs and attorney's fees under section 105(a) as a sanction for ordinary civil contempt."). Here, the Trustee relies on § 105(a), rather than § 362(k)(1), in seeking the imposition of sanctions. *See* Mot. at 1; Tr's Reply in Supp. of Mot. (Doc. 125) at 5–6.

 Sixth Circuit case law holds that "[a] litigant may be held in contempt if his adversary shows by clear and convincing evidence that he violate[d] a definite and specific order of the court requiring him to perform or refrain from performing a particular act or acts with knowledge of the court's order." *N.L.R.B. v. Cincinnati Bronze, Inc.*, 829 F.2d 585, 591 (6th Cir. 1987) (internal quotation marks omitted).[5] "[T]he automatic stay is exactly the kind of

---

4. Section 362(h) was renumbered as § 362(k)(1) with the enactment of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005.

5. The issuance of a show cause order does not shift the burden of proof from the movant, but instead "acts as notice to the relevant party by informing the party what conduct is alleged to be sanctionable, and allows the party an opportunity to respond[.]" *Cook v. Am. S.S. Co.*, 134 F.3d 771, 776 (6th Cir.1998). "[B]y presenting evidence and arguments why sanctions should not be imposed, the party has the opportunity to 'persuade' the court that sanctions are not warranted." *Id.*

definite and specific order of the court contemplated by the Sixth Circuit." *Elder–Beerman Stores Corp. v. Thomasville Furniture Indus., Inc. (In re Elder–Beerman Stores Corp.),* 197 B.R. 629, 633 (Bankr.S.D.Ohio 1996) (internal quotation marks omitted). "The party alleging contempt must show that the defendant had knowledge that the [automatic] stay was in effect and nonetheless took an action in violation of the stay." *TLB Equip., LLC v. Quality Car & Truck Leasing, Inc. (In re TLB Equip., LLC),* 479 B.R. 464, 480 (Bankr.S.D.Ohio 2012).

**Proceedings Before the Court**

Long before the Complaint was filed, Fulson and Sanders had knowledge of the automatic stay in the Debtor's bankruptcy case, which was initiated by the filing of an involuntary Chapter 7 petition on March 23, 2009 ("Petition Date"). The petitioning creditors (collectively, "Petitioning Creditors") were Kemper Casualty Insurance Company, the Commonwealth of Pennsylvania, Midwest Business Capital and Larry J. McClatchey, the Chapter 11 trustee in the case of Nicole Energy Services, Inc. ("NES"). Proceeding *pro se,* Fulson filed a motion seeking dismissal of the involuntary petition and the imposition of sanctions against the Petitioning Creditors. *See* Doc. 9. That motion was stricken, *see* Doc. 14, because as a non-lawyer Fulson was not entitled to respond to the involuntary petition on behalf of the Debtor, a limited liability company. *See* Local Bankruptcy Rule 1074–1(a) and 9011–2(b). The Debtor failed to respond to the involuntary petition, and the Court entered an order for relief. *See* Doc. 16. Fulson filed a motion for reconsideration of the order for relief (Doc. 19), but the Court entered an order denying that motion, finding that Fulson did not set forth any ground for relief under Federal Rule of Civil Procedure 59(e). *See* Order Denying Motions for Reconsideration of Orders for Relief (Doc. 30) at 5. Fulson then filed a motion for summary judgment (Doc. 32), arguing that, because the Petitioning Creditors' claims were subject to a bona fide dispute, it was improper for them to commence the involuntary case. Having resolved all prior motions and objections that were pending before it, and there being nothing left to decide as a matter of law, the Court denied the motion for summary judgment. *See* Doc. 43.

The Trustee filed a notice of the need to file proofs of claim and served the notice on, among others, Fulson and Sanders, *see* Doc. 57, who filed proofs of claim against the Debtor's estate.

Property of the Debtor's estate included potential claims against Columbia Gas Transmission Corporation ("TCO"). The Trustee filed a motion under Rule 9019(a) of the Federal Rules of Bankruptcy Procedure seeking authority to compromise claims of the Debtor against TCO. In that motion, the Trustee proposed to accept a cash payment of $250,000 in exchange for complete releases of any and all claims of the Debtor against TCO and its affiliated entities. *See* Doc. 62. Fulson and Sanders filed objections to the motion to compromise, *see* Docs. 63, 64, 65, and the Court denied the motion, finding, among other things, that the motion did "not contain an estimate of the amount or range of amounts that [the Trustee] might receive if he were to pursue claims against TCO, making it impossible for the Court to determine whether the proposed settlements are within the range of reasonableness." Doc. 87 at 10.

The Trustee filed a second motion to compromise ("Second Compromise Motion") (Doc. 104). "The material terms of the compromise are that TCO will pay the bankruptcy estate $250,000.00 in exchange

for a full, final and complete dismissal and release of any and all claims of NGP against TCO, and its affiliated entities, and in turn, TCO will dismiss any and all claims that it has against NGP." Doc. 104 ¶ 34. Fulson filed an objection to the Second Compromise Motion (Doc. 111), as did Sanders (Doc. 112), and the Trustee filed a response in support of the Motion. *See* Doc. 118. The Second Compromise Motion remains pending.

**The Complaint**

On January 24, 2013, Lowe, as counsel, and Sanders, as of counsel, filed the Complaint in the Court of Common Pleas of Franklin County, Ohio ("State Court") against defendants TCO, Columbia Gas of Ohio, Inc., Columbia Gas of Pennsylvania, Inc. and Columbia Gas of Kentucky, Inc. (collectively, "Columbia Entities") on behalf of Fulson as plaintiff. As discussed above, Fulson and Sanders had knowledge of the pendency of the Debtor's bankruptcy case and the automatic stay well before the Complaint was filed. The Complaint demonstrates that Lowe also had knowledge of NGP's bankruptcy case at the time the Complaint was filed. *See* Compl. ¶¶ 102–08. The Fulson Parties did not, however, provide the Trustee with notice of the filing of the State Complaint. *See* Mot. at 6. Furthermore, by filing the Complaint, the Fulson Parties violated the automatic stay. In the complaint, Fulson seeks damages allegedly sustained as a result of the Columbia Entities's alleged violations of the Ohio Revised Code §§ 2923.31–2923.36 (West 2013), the Ohio Corrupt Practices Act ("OCPA"). *See*

Compl. ¶ 6. The OCPA "was modeled on the federal Racketeer Influenced and Corrupt Organizations Act … [and] has been denominated Ohio's RICO statute." *State v. Allen*, No. 11AP–1130, 2013 WL 596377, at *1 n. 1 (Ohio Ct.App. Feb. 14, 2013) (internal quotation marks omitted). Alleging that the Columbia Entities committed violations of the OCPA, Fulson asserts claims for damages "in his capacity as the 100% owner of NES and NGP." Compl. ¶ 125. The Court will refer to these claims as the "Ohio RICO Claims."

The Ohio RICO Claims arose prior to the Petition Date of March 23, 2009 and include 13 predicate acts. Those acts include using interstate mail and wire communications for allegedly fraudulent purposes from December 1, 1999 to September 2002, *see* Compl. ¶ 124(1)-(4), dates that preceded the Petition Date. The Complaint also alleges other acts that occurred prior to the Petition Date—"fraudulently forc[ing] NES into involuntary bankruptcy on November 14, 2003[,]" Compl. ¶ 124(5); "unlawfully solicit[ing] third-parties to join as bankruptcy petitioners from November 2003 through January 2004[,]" Compl. ¶ 124(6); "fraudulently maintain[ing] the NES involuntary bankruptcy from November 14, 2003 to November 5, 2012[,]" Compl. ¶ 124(7);[6] "seek[ing] the appointment of a Chapter 11 Trustee in the NES bankruptcy[,]" Compl. ¶ 124(8); "from October 2006 through April 2008 … unlawfully block[ing] NES from redress for [other] predicate acts … by purchasing NES's damage claims against TCO,"

---

**6.** Despite the reference to the date of November 5, 2012, this predicate act occurred before the Petition Date. Although the Columbia Entities were petitioning creditors in the NES bankruptcy, the case became a voluntary Chapter 11 case and an agreed order with NES regarding the appointment of a trustee was entered on August 18, 2004, *see* Case No. 03–67484, Doc. 155, with the appointment approved by an order entered on October 8, 2004. *See* Case No. 03–67484, Doc. 162. There is no basis for alleging that the Columbia Entities were "maintaining" the NES bankruptcy after the appointment of the NES trustee, which occurred prior to the Petition Date in the NGP case.

Compl. ¶ 124(9); "from September 1, 2002 through April 7, 2004 ... fraudulently credit[ing] NGP with only one-third of the gas delivered by NGP into the TCO system," Compl. ¶ 124(10); "using interstate mail and wire communications from September 1, 2002 through April 7, 2004 to fraudulently misappropriate two-third of the gas delivered by NGP into the TCO system," Compl. ¶ 124(11); "using interstate mail and wire communications from September 1, 2002 to the present to fraudulently seize and 'escrow' gas delivered by NES into the TCO system[,]" Compl. ¶ 124(12);[7] and "using interstate and mail and wire communications in February and March of 2009 to unlawfully solicit third-parties to file a Chapter 7 involuntary bankruptcy petition against NGP...." Compl. ¶ 124(13). In sum, the Ohio RICO Claims arose entirely prior to the Petition Date.

■ As already noted, Fulson asserts a claim for damages under the OCPA "in his capacity as the 100% owner of NES and NGP." Compl. ¶ 125. The Court need not and does not reach the issue whether the Ohio RICO Claims have any merit or the issue whether, as the Trustee contends, Fulson lacked an equity interest in the Debtor.[8] Assuming for the sake of this order that Fulson had an equity interest in the Debtor (either directly or indirectly), it is clear that an OCPA claim of an equity holder in his or her capacity as an equity holder is derivative of the claim of the company that allegedly was harmed—here,

NGP. *Cf. Warren v. Mfrs. Nat'l Bank of Detroit,* 759 F.2d 542, 544 (6th Cir.1985) (holding in the context of a claim brought under the federal Racketeer Influenced and Corrupt Organizations Act ("Federal RICO Act") that "[a]n action to redress injuries to a corporation cannot be maintained by a shareholder in his own name but must be brought in the name of the corporation [because] [t]he shareholder's rights are merely derivative and can be asserted only through the corporation") (quoting *Stevens v. Lowder,* 643 F.2d 1078, 1080 (5th Cir.1981)). As of the Petition Date, therefore, the Ohio RICO Claims belonged to the Debtor. Property of a debtor's bankruptcy estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). Thus, prepetition causes of action of a Chapter 7 debtor are property of the debtor's estate. *See Parker v. Goodman (In re Parker),* 499 F.3d 616, 624 (6th Cir.2007) ("As 'legal and equitable interests,' causes of action that belong to the debtor constitute property of the estate under § 541(a)(1)."). The Chapter 7 trustee has the exclusive right to assert those claims. *See Stevenson v. J.C. Bradford & Co. (In re Cannon),* 277 F.3d 838, 853 (6th Cir.2002) (holding that a Chapter 7 trustee has the exclusive right to assert causes of action belonging to the debtor).

The Fulson Parties argue that Fulson may assert claims under the OCPA because that statute, unlike the Federal RICO Act, provides standing to persons

---

**7.** Although the predicate act of "using interstate mail and wire communications from September 1, 2002 *to the present* to fraudulently seize and 'escrow' gas delivered by NES into the TCO system[,]" Compl. ¶ 124(12) (emphasis added), might at first blush appear to relate in part to events occurring after the Petition Date, the Complaint itself states that NES "ceased operations in

September of 2002[,]" Compl. ¶ 50, and that NGP "went out of business" in April 2004. Compl. ¶ 101. Accordingly, no gas was seized from NES or NGP after April 2004.

**8.** The discussion of the Ohio RICO Claims in this order should not be construed to suggest that the Court believes that the Ohio RICO Claims have any merit.

who are injured either " 'directly or indirectly' " by violations of the OCPA. Surreply at 1 (quoting Ohio Rev.Code § 2923.34(E)). It is not entirely clear what the term "indirectly" means in the context of the OCPA, and at least one Ohio court has held that a derivative interest is insufficient to support a claim under the Ohio RICO Act. *See Cleveland v. JP Morgan Chase Bank, N.A.*, No. 98656, 2013 WL 1183332, at *4, 9 (Ohio Ct.App. Mar. 21, 2013) (dismissing a claim under the OCPA because it alleged "an injury derivative of the injury inflicted on others").

In any event, the Fulson Parties' argument that Fulson is permitted to pursue litigation in State Court for the difference between what he believes NGP would recover in that litigation and the amount that the Trustee would receive on behalf of the Debtor's estate if the Second Compromise Motion is approved is inconsistent with controlling Sixth Circuit law. If Ohio RICO Claims exist at all under the facts set forth in the Complaint, then the Debtor indisputably had—and thus the Trustee has—the right to assert them, and the Ohio RICO Claims accordingly are the exclusive property of the Debtor's bankruptcy estate. *See Honigman v. Comerica Bank (In re Van Dresser Corp.)*, 128 F.3d 945, 947 (6th Cir.1997) ("[I]f the debtor could have raised a state claim at the commencement of the bankruptcy case, then that claim is the exclusive property of the bankruptcy estate and cannot be asserted by a creditor.").

In *Van Dresser Corp.*, Daniel M. Honigman, a shareholder and creditor of the debtor, Van Dresser Corp. ("Van Dresser"), filed a lawsuit in state court, alleging that Comerica Bank and other defendants "caused him to lose $1,125,000 by wrongfully taking $2.7 million from Van Dresser subsidiaries, thereby forcing Van Dresser to default on loans for which the plaintiff was the guarantor or cosigner." *Id.* at 946. Comerica removed the case to the bankruptcy court, which granted Comerica's motion to dismiss Mr. Honigman's complaint. *See id.* "The district court affirmed, holding that Honigman's claim was derivative, that it was the exclusive property of [Van Dresser's bankruptcy estate], and that therefore, he had no standing to sue." *Id.* The Sixth Circuit began its analysis with the principles discussed above that "the interests of the debtor in property include causes of action" and that "[a] debtor's appointed trustee has the *exclusive* right to assert the debtor's claim." *Id.* (internal quotation marks omitted). The court pointed out that "if Honigman's state claims could have been brought by Van Dresser or its subsidiaries on [the date Van Dresser commenced its bankruptcy case], then the plaintiff is barred from pursing them now." *Id.* The Sixth Circuit concluded that he was so barred and that Mr. Honigman was limited to recovering the amount, if any, that he was entitled to receive from the settlement between Comerica and the other defendants and the trustee for Van Dresser's bankruptcy estate. *See Van Dresser Corp.*, 128 F.3d at 949.[9]

The Bankruptcy Code provides that the filing of a bankruptcy petition, including an involuntary petition, "operates as a stay, applicable to all entities, of—any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the es-

**9.** As noted above, Fulson and Sanders have filed objections to the Second Motion to Compromise, with their standing to do so apparently based on the proofs of claim they have filed. The Trustee has filed objections to those claims, and contemporaneously with this order the Court is entering orders to show cause as to why the Trustee's objections should not be sustained.

tate...." 11 U.S.C. § 362(a)(3). Accordingly, it is a violation of the automatic stay for an entity other than the trustee to assert a claim belonging to a Chapter 7 estate. *See Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff)*, 429 B.R. 423, 430 (Bankr. S.D.N.Y.2010) ("The Florida Plaintiffs violated the stay by usurping causes of action belonging to the estate under sections 362(a)(3) and 541 of the Code."). The Fulson Parties, therefore, violated the automatic stay by bringing the Ohio RICO Claims.

The Fulson Parties make several additional arguments in support of their position that they should not be held liable for violating the automatic stay, but none of those arguments is well taken. First, the Fulson Parties contend that they "carefully considered whether the filing of the [Complaint] would violate the automatic stay in this case and concluded, in good faith, that it would not." Resp. to Mot. (Doc. 122) at 1. That may well be true, but a "[g]ood faith [belief] is not a defense in civil contempt proceedings." *Gnesys, Inc. v. Greene*, 437 F.3d 482, 493 (6th Cir.2005). *See also TWM Mfg. Co. v. Dura Corp.*, 722 F.2d 1261, 1273 (6th Cir.1983) ("[A]dvice of counsel and good faith conduct do not relieve from liability for a civil contempt, although they may affect the extent of the penalty.") (internal quotation marks omitted).

Second, the Fulson Parties contend that "[t]he damages sought by Fulson are damages to him individually, not damages to the NGP estate." Resp. to Mot. at 1. Yet the Fulson Parties themselves state that Fulson has a claim under the Ohio RICO Act "[a]s a person with an ownership interest in NGP...." Surreply (Doc. 132) at 2. As discussed above, therefore, this claim is derivative of any claim NGP might have against the Columbia Entities.

Finally, the Fulson Parties argue that they should not be held in contempt because they "have filed an amended RICO complaint that seeks damages arising only from the NES contracts." Resp. to Mot. at 2. Even if this were true, it would not change the fact that the Trustee incurred attorneys' fees and costs as a result of the filing of the Complaint. One of the primary purposes of holding a party in civil contempt is to compensate the affected party for injuries caused by the contempt. *See TWM Mfg.*, 722 F.2d at 1273 ("Although civil contempt may serve incidentally to vindicate the court's authority, its primary purposes are to compel obedience to a court order and compensate for injuries caused by noncompliance. The award of attorney's fees and expenses to a successful movant may be appropriate in a civil contempt proceeding.") (citations and internal quotation marks omitted). Further, the amended Complaint seeks to impose liability on the Columbia Entities for, among other things, allegedly "using interstate mail and wire communications to fraudulently force NES into involuntary bankruptcy on November 14, 2003 based on fraudulent creditor claims *and for the purpose of fraudulently blocking the NGP from legal redress for predicate acts (1)– (4)*, in violation of 18 U.S.C. 1341 (mail fraud), 18 U.S.C. 1343 (wire fraud) and Ohio Rev.Code 2913.05 (telecommunications fraud)...." Am. Compl. ¶ 107(5). Thus, the Fulson Parties' representation that the amended Complaint (Doc. 124) seeks remedies only with respect to NES contracts is simply not true.

**In light of the foregoing, the Fulson Parties shall appear and show cause why they should not be held in civil contempt and sanctioned for violating the automatic stay. The show cause hearing will be held on December 9, 2013 at 9:30 a.m. in Courtroom A, United**

States Bankruptcy Court, 170 N. High Street, Columbus, OH 43215.

IT IS SO ORDERED.